Martha J. ABNER, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 1282S513.

Supreme Court of Indiana.

Sept. 18, 1986.

Eugene C. Hollander, Sp. Asst., State Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Justice.

Appellant Martha J. Abner was convicted after a jury found her guilty of murder by inducing another to kill, a felony, Ind. Code § 35-42-1-1 (Burns 1979 Repl.); Ind. Code § 35-41-2-4 (Burns 1979 Repl.), and conspiracy to commit murder, a class A felony,

Ind. Code § 35–41–5–2 (Burns 1979 Repl.). The trial court sentenced her to concurrent terms of fifty years imprisonment for the murder and thirty years imprisonment for conspiracy. Because of our disposition of this direct appeal, we address only the following issues:

1) Whether the trial court erred in allowing the State to amend the information for conspiracy six days before trial;

2) Whether the trial court erred by joining the two charges in one trial; and

3) Whether the evidence was sufficient to support the verdict of guilty of murder.

These are the facts which support the judgment of the trial court. Charles W. Abner, Sr., appellant's husband, died at the hand of one Ricky Shelton on July 26, 1980. Shelton pushed him in the White River and shot him. An autopsy revealed that a single gunshot wound to the head caused the death.

Margaret Rouse, daughter of Martha and Charles, testified that approximately one month before her father's death, she was present at a conversation between appellant and Rouse's cousin, Ricky Shelton. At that time, appellant asked Shelton to push her husband into the river while on one of his many fishing trips and mentioned that Shelton would receive something for doing so. Shelton agreed. Rouse's sister, Pam Abner, was also present during this discussion. Appellant assigned her to call Shelton when her father left to go fishing.

On the day of her father's death, Margaret Rouse accompanied him on a fishing trip. While en route to a new fishing location, they encountered Shelton, who asked if he could join them. Abner agreed. Shelton transferred a rifle from his car to Abner's pick-up truck and the three proceeded to a fishing site on the banks of the White River in Washington County.

When Rouse's fishing line broke, she left her father and Shelton on the river bank and returned to the truck to repair her line. She heard a splash, turned and saw her father in the river and Shelton standing on the bank holding the rifle. She believes she may have heard a shot after the splash. After an aborted rescue attempt, Shelton fled the scene. Rouse's further attempts at rescue were unsuccessful.

Karen Benge, Shelton's wife at the time of the incident, testified at trial. The day before the victim's death, Shelton told her that appellant and her daughters, Pam and Margaret, had asked him to kill Charles Abner, Sr. He also said that he would be "paid a little bit." She further testified that on the day of Abner's death, Shelton had received a telephone call. He told her the call was from Pam Abner and that he was to meet Rouse and kill the victim. They left the house, Shelton taking a .22 caliber rifle with him. Shelton dropped his wife off before meeting Abner and Rouse. Later that evening, Shelton told her that "they had done it." After the incident, Shelton began dropping by the Abner house periodically; Martha Abner would hand him money directly or leave it in an envelope for him.

Jimmy Thompson, an Indiana State Police firearms examiner, testified that the .22 caliber shell casings found at the scene could have been fired from the .22 caliber rifle which was recovered during the investigation and identified by Benge as the rifle carried by her husband on the day of the incident.

Several witnesses testified that appellant had discussed her husband's death in their presence. Rouse related that Abner had asked her to push her father in the river and threatened to commit her to a mental institution when she refused. She also testified that appellant had asked her brother to kill the victim, but he had wanted too much money. Two other Abner children testified that their mother had told them not to be surprised if they "got a phone call and they said they found your dad in the river." Pam's former fiance testified that appellant had offered him a new car and a mobile home if he would kill her husband.

The State also presented evidence that the proceeds of two insurance policies were

paid to appellant upon the death of her husband. In addition, the proceeds of a mortgage insurance policy were paid directly to the holder of the mortgage on the family home.

### I. *Amendment of the Information*

On August 27, 1981, Abner was charged with conspiracy to commit murder, a class A felony. The charging information, in pertinent part, reads as follows:

> Martha Abner ... did then and there with intent to commit a felony, to-wit: murder; in that on or about July 26, 1980 in Washington County, State of Indiana, Rick Shelton did knowingly kill Charles W. Abner, Sr., by shooting at and against the body of the said Charles W. Abner, Sr., with a certain gun loaded with gunpowder and a metal bullet, then and there held in the hand of the said Rick Shelton and did then and there by (sic) inflict mortal wounds in and upon the body of the said Charles W. Abner, Sr., causing him to die; did agree with Rick Shelton to commit said felony, namely murder and that the said Rick Shelton did perform an overact (sic), to-wit: by shooting at and against the body of the said Charles W. Abner, Sr., with a certain gun loaded with gunpowder and a metal bullet, then and there held in the hand of the said Rick Shelton and did then and there inflict mortal wounds in and upon the body of Charles W. Abner, Sr. causing him to die; in furtherance of the agreement to kill Charles W. Abner, Sr.

Several days later, the State filed a separate information charging that appellant murdered Charles Abner, Sr. by inducing Shelton to kill him.

On December 9, 1981, the court allowed the State to amend the information for conspiracy over defendant's objection. The amended information read:

> Martha Abner ... did then and there agree with Rickey Shelton, for the object and purpose and with the intent to commit a felony, to-wit: the murder of Charles W. Abner, Sr., by pushing the said Charles W. Abner, Sr., into the White River with the intent that he drown, and in furtherance of the agreement the said Rickey Shelton did perform an overt act, to-wit: On July 26, 1980 he pushed Charles W. Abner, Sr., into the White River with the intent that he drown.

On December 15, 1980, trial commenced on the murder charge and on the amended conspiracy charge.

Appellant now alleges that the trial court committed reversible error in allowing the amendment of the conspiracy information in violation of Ind. Code § 35–3.1–1–5(e) (repealed and replaced by Ind. Code § 35–34–1–5, effective September 1, 1982), which provides that "[n]otwithstanding any other provision in this section, an indictment or information shall not be amended in any respect which changes the theory of the prosecution as originally stated...." Though this subsection has since been eliminated, it was in effect when Abner was charged and tried.

■ This Court has strictly applied this subsection of the Code, allowing the trial court no discretion and requiring no showing of prejudice to the defendant in amendments which alter the theory of the prosecution. *Trotter v. State* (1981), Ind., 429 N.E.2d 637, 641; *Gillie v. State* (1984), Ind., 465 N.E.2d 1380, 1383. The theory of the case has been defined as "[f]acts on which the right of action is claimed to exist." *Trotter*, 429 N.E.2d at 640; *Gillie*, 465 N.E.2d at 1383. In a criminal action, the facts upon which the action is claimed to exist are those facts which constitute the essential elements of the crime charged. These elements and the nature of the offense must be set out in the information. Ind. Code § 35–3.1–1–2(a)(4) (Burns 1979 Repl.) (repealed and recodified, Ind. Code § 35–34–1–2, effective September 1, 1982).

■ The essential elements of conspiracy are: 1) an agreement between two or more persons to commit a felony, 2) with intent to commit a felony, and 3) an overt act in furtherance of the conspiracy. *Ridgeway v. State* (1981), Ind.App., 422

N.E.2d 410, 414. The original charging information charged an overt act, saying "that the said Rickey Shelton did perform an overact (sic), to-wit: by shooting at and against the body of the said Charles W. Abner, Sr...." The amended information substantially changed the factual basis of that essential element: "in furtherance of the agreement the said Rickey Shelton did perform an overt act, to-wit: On July 26, 1980 he pushed Charles W. Abner, Sr., into the White River...." A minor variance in the factual basis of an essential element may not alter the theory of the prosecution, *see: Gibbs v. State* (1984), Ind., 460 N.E.2d 1217 (substituting "inanimate object" for "nunchucks" did not alter theory of prosecution for robbery). However, we cannot say that such a substantial change in the facts which constituted an essential element in the two informations did not alter the theory of the prosecution.

The State offers several arguments in support of the amendment. First, it correctly points out that defendant, having requested several continuances, was not arraigned on the charge until after the amendment. Therefore, appellee concludes, the amendment was proper under Ind. Code § 35–3.1–1–5(b), which allows for amendment "in matters of substance or form by the prosecutor upon giving notice to the defendant and with the consent of the court, at any time before arraignment." However, subsection (e), which bars amendments changing the theory of prosecution, specifically states that its provisions apply "notwithstanding any other provisions in this section."

The State then points out that Abner's defense under the original information was equally available under the amended information. We agree. That test applies, however, only in determining whether an amendment is one of form or of substance under Ind. Code § 35–3.1–1–5(c) and is not germane to a discussion of a violation of Ind. Code § 35–3.1–1–5(e). Appellant is not

required to show prejudice if a violation of subsection (e) is established.

Finally, appellee parenthetically observes that "[a]ppellant does not raise any issue as to any change in the identity of the overt act." On the contrary, we find appellant has argued that the amendment impermissibly altered the theory of the prosecution; she has cited the appropriate Code section and relevant authority in support of her argument. We find that the amendment did impermissibly alter the theory of the prosecution, and the trial court erred in allowing such an amendment.

Abner's conviction for conspiracy to commit a felony is reversed. Because of our disposition of this issue, we address only those remaining issues which concern Abner's murder conviction.

## II. *Joinder and Severance*

Appellant asserts that the trial court erred in granting the State's motion to join the conspiracy and murder charges and in denying her later motion to sever. Appellant now alleges error in both rulings. She argues that because of the complexity of the evidence, severance was necessary to ensure the defendant a fair and impartial trial.

Joinder is proper when the offenses "[a]re based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan." Ind. Code § 35–3.1–1–9(a)(2), (Burns 1979 Repl.) (repealed and recodified by Ind. Code § 35–34–1–9.) [1]

In this case, the conspiracy charge and the murder charge both arose from a single scheme, beginning as an agreement formed at the Abner kitchen table and ending in Mr. Abner's death. These charges were sufficiently related to be properly joined.

Once joined, the conspiracy information was amended, and defendant moved for severance of the charges. The Code pro-

---

**1.** § 35–3.1–1–9 governs the original joinder of charges in one information or indictment. § 35–3.1–1–10 applies the same test to a motion to join two or more separately filed informations.

vides that the court shall grant a severance whenever it

determines that severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense with a view to the number of offenses charged, the complexity of the evidence to be offered, and whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense. Ind. Code § 35–3.1–1–11 (Burns 1979 Repl.) (repealed and recodified by Ind. Code § 35–34–1–11).

Appellant argues that "the factual situations alleged in the conspiracy count and the Murder Count were so different in content ... that justice required that her motion for severance be granted." Though, indeed, the amendment of the conspiracy information facially altered that information to such an extent that the amendment was statutorily improper, the acts which constituted the actual commission of the crime remained a single scheme or plan. The amendment of the information did not affect the propriety of the joinder.

Additionally, appellant argues that the evidence presented at trial was confusing in that some evidence was admissible to prove one charge but inadmissible to prove the other. Specifically, she points to the gun used by Shelton and the testimony of Officer Demlow and Karen Benge concerning that gun. She argues that such evidence was admissible on the murder charge only and thus confused the jury, resulting in an unfair trial.

While we do not agree with appellant's assessment of this evidentiary question, that issue is not directly before us. Rather, we find that the trial judge carefully considered the admissibility of each item of evidence and admonished the jury as to that evidence which he believed had only limited admissibility. No particular confusion arose from this process, and we discern no unfairness to Abner.

This trial involved only two closely related charges. The evidence, though circumstantial, was not particularly complex. "The determination of whether to sever the charges is committed to the trial court's discretion." *Willard v. State* (1980), 272 Ind. 589, 596, 400 N.E.2d 151, 156. The trial court was within its discretion in ordering the joint trial of the conspiracy charge and the murder charge.

### III. *Sufficiency of Evidence*

Appellant challenges the sufficiency of the evidence supporting her conviction for murder. In addressing the issue of sufficiency of the evidence, we will affirm the conviction if, considering only the probative evidence and reasonable inferences supporting the verdict, without weighing evidence or assessing witness credibility, a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt. *Loyd v. State* (1980), 272 Ind. 404, 407, 398 N.E.2d 1260, 1264, *cert. denied*, 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105 (1980).

First, appellant contends that the evidence is insufficient to support the murder conviction because "the State failed to prove that the defendant ever discussed murder by gunshot. The only testimony during trial regarding the Defendant's discussion of the murder of her husband relates to her requesting that Ricky Shelton merely push him in the river so that he might drown." We completely reject this contention. The evidence showed that, for sometime, Abner had wished her husband dead and had sought means to affect his end, that she had agreed with Shelton and intended for him to kill her husband, and that she gave Shelton money after the deed was completed. The fact that Shelton tried to kill Mr. Abner by pushing him in the river and subsequently found that he would have to finish the job by shooting him does not exculpate Martha Abner. The State has no burden to prove that the method used to complete the crime was the same method contemplated by the agreement.

Appellant also argues that the gun recovered during the investigation was not sufficiently linked to Shelton, thus rendering the evidence supporting Abner's conviction insufficient. She does not challenge the admissibility of this evidence, she merely questions its "evidentiary significance." Clearly, this was a question for the jury; any tenuousness in the connection between the defendant and the evidence reflects on the weight of the evidence. *Malott v. State* (1985), Ind., 485 N.E.2d 879, 884. The evidence is sufficient to support the verdict of guilty of murder.

The conviction for conspiracy is reversed. The judgment of conviction for murder is affirmed.

GIVAN, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.