Roger Allen JASKE, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 48A02–8701–CR–00021.

Court of Appeals of Indiana,
Second District.

June 13, 1989.

Blanchard H. Shearer, Anderson, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

SHIELDS, Presiding Judge.

Roger Allen Jaske appeals his conviction of conspiring to commit escape, a class C felony.[1]

We reverse and remand for retrial.

1. IC 35–41–5–2 (1988) states, in relevant part: "[A] person conspires to commit a felony when, with intent to commit the felony, he agrees with another person to commit the felony. A conspiracy to commit a felony is a felony of the same class as the underlying felony." IC 35–44–3–5 (1982) (amended 1986) defines the felony of escape in the following language: "[A] person who intentionally flees from lawful detention ... commits escape, a class D felony. However, the offense is a class C felony if, while committing it, the person ... uses a deadly weapon...." The information charged that Jaske and another "did agree for the object and pur-

## ISSUE

Jaske raises several issues, but the following is dispositive of his appeal: Whether the trial court abused its discretion in denying Jaske's petition for appointment of a special prosecutor.

## FACTS

In February, 1985, while incarcerated in the Indiana State Reformatory at Pendleton, Roger Jaske concocted an escape plan which involved soliciting the aid of "mercenaries" through an advertisement he placed in "Soldier of Fortune" magazine. The plan was discovered by police; ultimately, Jaske was convicted of conspiring to commit escape, a class C felony, in a joint trial with eight others who allegedly participated in the conspiracy.

Prior to his trial Jaske petitioned the court for appointment of a special prosecutor. The petition stated, in relevant part:

Comes now the Defendant, Roger Allen Jaske ... who, being first being [sic] duly sworn upon his oath, says:

1. That the Defendant herein is presently charged in the above entitled cause with the offense of conspiracy to commit escape, a Class C felony;

2. That the said charges were filed by the Madison County Prosecutor's office by the Madison County Prosecutor, William F. Lawler, Jr.;

3. That Chief Deputy Prosecutor, Thomas J. Broderick, Jr., is the Deputy Prosecuting Attorney assigned to prosecute this case;

.    .    .    .    .

5. That, prior to being elected as Prosecuting Attorney for the present term, William F. Lawler, Jr., represented the Defendant in a Petition for Post Conviction Relief with regard to his conviction for first degree murder arising out of the Superior Court of St. Joseph County, State of Indiana. That upon his election and taking office in January, 1983, the said William F. Lawler, Jr., did resign as Defendant's attorney and turned the case over to other counsel for continued representation on the Petition for Post Conviction Relief;

6. That, the said William F. Lawler, Jr., did, during the course of his representation of Defendant obtain knowledge of facts which are closely interwoven with the facts upon which the present prosecution is based;

7. That, pursuant to I.C. 33-14-1-6, the Defendant requests the appointment of a Special Prosecutor for the reason that this Prosecutor and, therefore, all persons on his staff and/or associated with him in the private practice of law have a conflict of interest due to the elected Prosecutor's representation of this Defendant at some time in the past. That, in addition, the appointment of a Special Prosecutor is necessary to avoid the appearance of impropriety.

Record at 88-89. At the bottom of the petition appears a jurat executed by a Madison County Notary Public.

During the hearing on the petition, Deputy Prosecutor Broderick orally stipulated to these facts:

Mr. Lawler represented Mr. Jaske in a post-conviction relief petition filed obvi-

---

pose and with intent to commit a felony, to wit: the escape of ROGER ALLEN JASKE, a person being held under the custody and control of the Indiana Department of Corrections and that during said escape deadly weapons were to be used by the persons involved." Record at 15.

Thus, one who, with the requisite intent, conspires with another to use deadly weapons in effecting his escape from lawful detention may be properly charged with and ultimately convicted of conspiracy to escape as a class C felony (or a class B felony, under the present statute). Therefore, Jaske's contention that the State must prove deadly weapons were actually used in an escape attempt in order to charge

him with commission of the enhanced class C felony is meritless. Likewise, an instruction to the jury that the State must establish such facts would be erroneous. A conspiracy is a criminal agreement of two or more persons, the object of which is the commission of a felony, but it is not required that the felony actually be committed or even attempted. *Taylor v. State* (1981), Ind., 425 N.E.2d 141. Rather, only an overt act committed in furtherance of the agreement need be established. IC 35-41-5-2(b) (1988). We address Jaske's expression of concern in this regard only because it is likely to be reiterated upon retrial or in any subsequent plea negotiations.

ously after ... [Jaske's murder] ... conviction was obtained.... and withdrew as counsel in that matter before that matter was completed and that matter, the PCR, that was on the conviction that he is or was incarcerated on.

Supp. Record at 286.

No other facts concerning Lawler's prior representation of Jaske were presented to the trial court and, after hearing arguments of counsel, the court denied the petition.

## DISCUSSION

■ The State contends the trial court properly denied Jaske's petition because it was not verified as required by IC 33–14–1–6 (1988).[2] Specifically, the State argues:

> [a] proper verification requires that the person executing it affirm under the penalties for perjury, or state upon oath, before an official authorized to administer oaths, that the representations within the body of the petition are true ... An examination of the petition ... does not show that the person executing [it] has sworn that the representations contained therein were true.

Appellee's Brief at 19 (citations omitted).

The State cites *Jones v. State* (1988), Ind., 517 N.E.2d 405 and *Hendricks v. State* (1981), Ind., 426 N.E.2d 367 in support of its argument. In *Jones*, our supreme court held the trial court did not err in dismissing a petition for appointment of a special prosecutor because the petitioner, in an apparent attempt to comply with

Indiana Rules of Procedure, Trial Rule 11(B),[3] had merely *affirmed* his statements were true without stating they were made under penalties for perjury. *Jones* supports the State's argument to the extent it holds that denial of an improperly verified petition is not error, but it is otherwise factually distinguishable from the present case.

Trial Rule 11(B) (and similarly IC 35–34–1–2.4 (1988)) prescribes a method of verification without the presence of a notary or other officer authorized to administer an oath. *See Austin v. Sanders* (1986), Ind., 492 N.E.2d 8 and IC 35–34–1–2.4(b). The rule allows the petitioner to verify by stating, in substantially the following language, that he "affirm[s] under penalties of perjury ... [his] ... representations are true."

Here, the inclusion in Jaske's petition of the express language of T.R. 11(B), that he affirmed the representations contained therein were true, would have been redundant. Jaske swore his statement under an oath administered by a notary. To "swear" is "to declare on oath the truth". *Black's Law Dictionary* 1298 (5th ed. 1979). An "oath" is "[a]n affirmation of truth of a statement, which renders one willfully asserting untrue statements punishable for perjury." *Id.* at 966. Jaske's employment of the words "sworn upon ... oath," followed by "says" to preface his subsequent statements, is an assertion of the truth of his statements under penalties for perjury.[4]

2. "A circuit or superior court judge ... [m]ay appoint a special prosecutor if: (A) A person files a *verified* petition requesting the appointment of a special prosecutor; and (B) The court finds by clear and convincing evidence that the appointment is necessary to avoid an actual conflict of interest...." IC 33–14–1–6 (1988) (emphasis added).

3. "When in connection with any civil or special statutory proceeding it is required that any pleading, motion, petition, supporting affidavit, or other document of any kind, be verified, or that an oath be taken, it shall be sufficient if the subscriber simply affirms the truth of the matter to be verified by an affirmation or representation in substantially the following language: 'I (we) affirm under the penalties for perjury, that

the foregoing representation(s) is (are) true. (Signed) _____.'" Ind. Rules of Procedure, Trial Rule 11(B).

4. IC 35–34–1–2 (1988) which sets forth the form of an information or indictment also requires "[a]n information shall be signed by the prosecuting attorney or his deputy and *sworn to or affirmed* by him or any other person." Part (f) of that statute states in relevant part:

> The information may be substantially in the same form as the indictment, substituting for the words, "the grand jury of the county of _____, upon their oath or affirmation so present" the following: "CD, *being duly sworn on his oath*, says...."

This is substantially the format Jaske employed.

The facts of *Hendricks* are also distinguishable from those at bar. The petition in *Hendricks,* though notarized, begins with the petitioner's statement that she "respectfully *represents* to the court as follows...." There is no introductory statement that the affiant was swearing the ensuing representations under oath.

Further, the essential purpose of verification is to subject petitioner to penalties for perjury. *Austin* at 9. The substance of Jaske's representations are neither vague, conclusory, nor hearsay, such that an action for perjury could not lie against him if they were untrue. "Whether the allegations of a petition are sufficiently verified can depend in part upon how the facts themselves are stated." *Austin* at 9. As in *Austin,* Jaske's petition stated facts which seem unlikely to be challenged, such as that Lawler previously represented him in a post-conviction relief proceeding pertaining to Jaske's prior murder conviction; that Lawler is now the Madison County Prosecutor and Broderick his deputy; that Jaske is presently charged with a criminal offense initiated by Lawler's office and assigned to Broderick; and that, during Lawler's previous representation of Jaske, Lawler obtained knowledge of facts pertaining to Jaske's previous conviction for murder. These statements are sufficiently succinct that an action for perjury could be litigated if they were untrue. Therefore, we hold the petition was verified.

■ Next, we address Jaske's contention that prosecutor Lawler, and therefore members of his staff including Broderick, should have been disqualified from representing the State in the conspiracy case against him because Lawler, through prior representation of Jaske, acquired knowledge of facts which were closely interwoven with those upon which Jaske's prosecution for conspiracy to escape were predicated. Specifically, Jaske is referring to those facts to which the State stipulated at the hearing on his petition—that Lawler had represented Jaske in a petition for post-conviction relief on the murder conviction for which Jaske was incarcerated when he devised his escape plan.[5] Thus Jaske asserts that proof of his lawful detention on the murder conviction is an element of the State's conspiracy case and therefore satisfies the "substantial relationship" test stated in *State ex rel. Meyers v. Tippecanoe County Court* (1982), Ind., 432 N.E.2d 1377.

We agree.

The essential elements of conspiracy are agreement between two or more persons to commit a felony with intent to commit a felony, and an overt act in furtherance of the conspiracy. *Abner v. State* (1986), Ind., 497 N.E.2d 550. In order for the State to prove the elements of its case against Jaske, it necessarily had to establish that Jaske agreed with another to commit a felony, i.e., his escape from lawful confinement.

In *Tippecanoe,* the prosecutor, when he was a public defender, previously had represented the defendant in two offenses charged in the habitual offender count presently pending against the defendant. In setting forth the test to determine whether the prosecutor should have been disqualified and a special prosecutor appointed, the court stated:

> The precepts of professional ethics forbid the participation of a lawyer in the prosecution of a criminal case if by reason of his professional relation with the accused, he has acquired knowledge of facts upon which the prosecution is predicated or which are closely interwoven therewith.

> •　　•　　•　　•　　•

> The test, stated alternatively in many jurisdictions, is that a lawyer must be disqualified if it is shown that the controversy involved in the pending case is substantially related to a matter in which the lawyer previously represented another client.

*Tippecanoe* at 1378 (citations omitted).

While we agree with the State that the fact of Jaske's lawful incarceration is a matter

---

5. The State notes in its brief that Jaske was incarcerated on a battery conviction as well as a murder conviction but cites no evidence of record establishing this fact. Our own search of the record has been unavailing.

of public record, this does not remove this case from the holding of *Tippecanoe*. That court acknowledged the fact of defendant's prior convictions was a matter of public record, but held:

> In this case it appears that nothing in Meyers's representation of the accused in the two prior theft cases would have any relation to the present theft case. However, the habitual offender charge is based upon the same two prior theft cases in which Meyers was involved. Therefore, there is a substantial relationship involved. Although it is true, [sic] that the fact of the defendant's prior convictions are a matter of public record, we cannot say without speculation that the prosecutor's knowledge of those prior cases will not actually result in prejudice to the defendant. The public trust in the integrity of the judicial system requires us to resolve any serious doubt in favor of disqualification.

Further, *State ex rel. Goldsmith v. Superior Court of Hancock County* (1979), 270 Ind. 487, 386 N.E.2d 942 holds that, if the prosecutor is disqualified, then so are members of his staff. Therefore, the trial court abused its discretion in denying Jaske's petition for a special prosecutor.

Reversed and remanded for proceedings consistent with this opinion.

NEAL, J., concurs.

BUCHANAN, J., dissents, with separate opinion.

BUCHANAN, Judge, dissenting.

I disagree with the majority's conclusion that the "substantial relationship" test announced in *State ex rel. Meyers v. Tippecanoe County Court* (1982), Ind., 432 N.E.2d 1377, required Lawler and his staff to withdraw from prosecuting Jaske for escape.

The purpose of appointing a special prosecutor is to prevent the prosecuting attorney from using, to his former client's detriment, information that was obtained from the client in confidence. *Sears v. State* (1983), Ind., 457 N.E.2d 192; *Havens v. State* (1981), Ind., 429 N.E.2d 618. Disqualification of a prosecutor is favored only when a *serious* doubt arises as to whether the prosecuting attorney's knowledge of a former client's prior cases will result in prejudice to the defendant. *Tippecanoe, supra*. *Tippecanoe* and like cases recognized that when an habitual offender charge is based upon the same two prior felony convictions, and the prosecutor had previously represented the defendant in those two cases, the "substantial relationship" test was satisfied and the prosecutor and his staff of deputies had to be disqualified. *Id.; State ex rel. Goldsmith v. Superior Court of Hancock County* (1979), 270 Ind. 487, 386 N.E.2d 942. In such instances, defense counsel would certainly acquire intimate facts directly related to the guilt or innocence of his client. Consequently, he may well have gleaned information closely interwoven with the facts *necessary* to obtain a conviction for the habitual offender count. To the contrary, the record in this case reflects that Lawler represented Jaske in a post-conviction relief setting only, and was not involved in the first degree murder conviction. And, Lawler did not complete his representation of Jaske in the post-conviction proceeding inasmuch as Lawler resigned as counsel when he was elected to the prosecutor's office.

Unlike prosecution of an habitual offender, the State need only prove that the defendant intentionally fled from *lawful detention* in order to convict for escape. Ind. Code 35–44–3–5 (1988). The record in no way demonstrates that the facts Lawler might have acquired during his representation of Jaske in the post-conviction proceedings were so closely interwoven with the prosecution of this case (escape). Under the circumstances, it is reasonable to conclude without speculation, that the knowledge Lawler gleaned of Jaske's prior murder conviction would not *actually* prejudice Jaske so as to require Lawler's withdrawal as prosecuting attorney on the escape charge. The relationship between Lawler's representation of Jaske during the post-conviction relief action and Lawler's prosecution of Jaske on the offense of escape is tenuous at best. I therefore cannot conclude that the "substantial relationship"

 

test of *Tippecanoe* was satisfied, and the trial court acted properly in denying Jaske's motion to appoint a special prosecutor.

The conviction should be affirmed.