John Allen HAAK, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 45S00–9702–CR–156.

Supreme Court of Indiana.

June 26, 1998.

Charles E. Stewart, Jr., Crown Point, for Appellant.

Jeffrey A. Modisett, Attorney General, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, for Appellee.

BOEHM, Justice.

John Allen Haak was convicted of murder and conspiracy to commit murder. The trial court sentenced him to consecutive terms of sixty and twenty years respectively. Haak's direct appeal presents several issues for our review that we restate as follows:

I. Did the trial court err in admitting several pieces of evidence?

II. Did the trial court err in restricting Haak's ability to question several witnesses?

III. Did the trial court err in permitting the charging information to be amended to delete a reference to the murder as an overt act performed in furtherance of the conspiracy?

IV. Was the evidence sufficient to support the convictions?

We affirm.

## Factual and Procedural History

Viewed most favorably to the verdict, the evidence at trial showed that on the night of August 14–15, 1988, Haak went to the home of John Pronger in Schererville, rang the doorbell or knocked, and shot Pronger twice when he answered the door. Pronger died from shotgun wounds to the chest and forearm. The killing was investigated by local police but initially remained unsolved. Five years later, information related to the crime surfaced in a federal investigation of drug trafficking in northwest Indiana. The matter was turned over to State authorities for prosecution in 1994. At trial several witnesses testified to a murder-for-hire scheme that culminated in Haak's killing Prónger for $10,000. Although Haak was recorded before trial admitting his involvement to a government informant, Haak testified at trial that he was not the perpetrator and that two of his accusers, Larry Harth and Timothy Weaver, had killed Pronger. A jury convicted Haak on both counts and he appeals. This Court has jurisdiction of Haak's appeal because the sentence for one of the offenses

exceeds fifty years imprisonment. IND. CONST. art. VII, § 4.

## I. Alleged Errors in the Admission of Evidence

Haak argues that the trial court erred in admitting several pieces of evidence. Specifically, the contentions relate to statements by co-conspirators claimed to be inadmissible hearsay, evidence allegedly admitted in violation of Indiana Evidence Rule 404(b), and Haak's incriminating statements to a government informant.

### A. Out-of-court statements by co-conspirators

The State's theory was: (1) Christine Loprete, Pronger's wife, instigated the scheme to kill her husband; (2) Murray Klebs, with whom Loprete was having an affair, financed the scheme and made the necessary arrangements; (3) Larry Harth, an employee of Klebs, acted as a middleman for Klebs; and (4) Haak was the hired killer. Various other witnesses played roles described below. Neither Klebs nor Loprete testified at trial but other witnesses reported statements attributed to them. Harth testified over Haak's objection that in July 1988 Klebs asked Harth if he knew anyone who could be hired to murder Pronger and how much the person would charge for the killing. Harth told Klebs that he would look into it and that it would probably cost $10,000. Harth then called Haak to ask if he was interested in carrying out the killing. In a second piece of co-conspirator testimony, Lonnie Bramlett testified over Haak's objection that Loprete told him around three weeks before the murder that she "may have to kill" Pronger.

■ A statement offered against a party is not hearsay if the statement is "by a co-conspirator of a party during the course and in furtherance of the conspiracy." Ind.Evidence Rule 801(d)(2)(E). Haak maintains that Harth's and Bramlett's testimony relaying Klebs's and Loprete's out-of-court statements was not admissible against him because the statements were made before Haak joined the conspiracy. Although there is no case on point under Indiana Evidence Rule 801, this claim is contrary to secondary authority and to federal doctrine under the

analogous federal evidence rule.[1] In any event, it is waived because Haak objected on different grounds at trial. He argued that Harth's testimony was inadmissible because the existence of a conspiracy to kill Pronger at the time of the statements had not been sufficiently proved. Similarly, Haak's objection to Bramlett's testimony was that Loprete's statement to Bramlett occurred before any conspiracy began. Having failed to convince the trial court that a conspiracy to kill Pronger was not under way at the time of the challenged statements, Haak cannot change course and assert a different objection on appeal. *Jester v. State*, 551 N.E.2d 840, 843 (Ind.1990). His new argument is therefore foreclosed at this point.

■ Haak next contends that Harth's and Bramlett's testimony violated his Sixth Amendment right of confrontation because there was no proof that Klebs and Loprete were unavailable to testify at trial. The Supreme Court of the United States has squarely held that the Sixth Amendment does not require a showing of unavailability before the admission of a co-conspirator's out-of-court statements made during the course and in furtherance of the conspiracy. *United States v. Inadi*, 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986) (construing analogous Federal Evidence Rule 801(d)(2)(E)). *Inadi* is controlling on this point of federal constitutional law because the Indiana Rule is word for word the same as the federal rule examined in *Inadi*. Accordingly, this provides no basis for reversal.

### B. *Indiana Evidence Rule 404(b)*

■ Linda Weaver, one of several witnesses who named Haak as the perpetrator, testified over Haak's objection that she told a federal agent she did not implicate Haak in the killing until 1993 because she was afraid of him. Although the argument is not particularly cogent, Haak appears to contend that this testimony was inadmissible under Rule 404(b) because it implied Weaver's knowledge of other crimes, wrongs, or acts by

Haak. Even if we agreed that Weaver's expression of fear of Haak somehow caused the jury to draw that inference—a dubious proposition at best—Rule 404(b) has nothing to do with this evidence. Weaver's testimony at most shows her state of mind and motive for not disclosing between 1988 and 1993 what she knew about Haak's involvement. Because Weaver did not testify to any conduct by Haak, Rule 404(b) provides no ground for excluding her testimony. *Hicks v. State*, 690 N.E.2d 215, 221 & n. 11 (Ind. 1997) (defendant's statements illustrating his state of mind were not evidence of "other crimes, wrongs, or acts" for purposes of Rule 404(b)).

### C. *Haak's statements to a government informant*

Northwest Indiana drug dealer Alvin McCarver was charged in 1992 with a number of federal drug-related offenses. Facing the possibility of a life sentence, he began cooperating with federal authorities in 1993. Although it does not appear that he was a party to the conspiracy, McCarver sold Haak the murder weapon the week before the killing. On May 20, 1994, Haak went to the Federal Building in Hammond to meet with McCarver (then in federal custody) at the latter's request. On July 8, 1994, the two met again as cellmates at the Federal Building after Haak had been arrested on a federal drug charge. At the behest of federal authorities who recorded both conversations, McCarver steered both exchanges to Haak's involvement in Pronger's murder. Haak was recorded stating that he shot Pronger and disposed of the gun and reporting the payment he had received for the killing.

■ Haak moved unsuccessfully before trial to suppress audio and video recordings of these conversations as involuntarily given. He contends that his Fifth and Sixth Amendment rights were violated when this evidence was admitted at trial over his objection. When a defendant challenges the voluntariness of a confession under the United States

---

1. "Admissibility of a co-conspirator statement is not dependent upon the timing of the party's joining the conspiracy; statements made before the defendant joined the conspiracy may be ad-

mitted." 13 ROBERT LOWELL MILLER, JR. INDIANA PRACTICE § 801.423, at 566–67 (2d ed.1995) (footnote omitted). See *id.* for federal cases to that effect.

Constitution, the State must prove by a preponderance of the evidence that the confession was voluntarily given. *Smith v. State,* 689 N.E.2d 1238, 1246–47 n. 11 (Ind.1997). The finding of voluntariness will be upheld if the record discloses substantial evidence of probative value that supports the trial court's decision. We do not reweigh the evidence and conflicting evidence is viewed most favorably to the trial court's ruling. *See, e.g., Ajabu v. State,* 693 N.E.2d 921, 926 n. 2 (Ind.1998).

■ Haak does not argue that his statements to McCarver were involuntary because of the circumstances of the interrogation or the questions McCarver asked to elicit the incriminating information. Rather, Haak maintains that his statements were coerced because of events that occurred before the challenged conversations. There was testimony that Haak's father was involved with McCarver's drug organization in the 1980s and had begun sharing information about McCarver with federal authorities in 1992. The father, who told Haak that he feared McCarver and possible reprisal due to his cooperation, sustained serious burn injuries in a fire at his apartment in 1994 that may have been set by McCarver's subordinates. Haak contends that when viewed against this backdrop of events, his "will was overborne in such a way as to render [his] confessions to McCarver ... the product of coercion." Haak relies on *Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) for the proposition that this states a Fifth Amendment claim.[2] In that case, Fulminante, while incarcerated in New York for illegal gun possession, was threatened by other inmates because of a rumor that he had murdered his stepdaughter in Arizona. Fulminante confessed the murder to another inmate after the inmate promised to protect Fulminante from assaults by other inmates if he told the truth about the Arizona killing. Accepting the lower court's finding that Fulminante faced "a credible threat of physical violence" unless he confessed, the Supreme Court held that "Fulminante's will was over-

borne in such away as to render his confession the product of coercion." *Id.* at 288, 111 S.Ct. at 1253. It was irrelevant whether the threat came from a government agent or a third party; a "credible threat" of violence was sufficient to render the confession involuntary. *Id.* at 287–88, 111 S.Ct. at 1252–53.

*Fulminante* is inapposite here because it involved a trade of benefit—protection—for the suspect's discussing the crime. Haak does not point to any evidence showing that he was promised immunity from possible reprisals against himself or his family if he confessed. Haak testified that (1) he concluded from prior telephone conversations with McCarver that "any of my family" who cooperated with law enforcement authorities against McCarver would "be got"; and (2) he went to meet with McCarver on May 20 because "I was afraid that if I didn't cooperate and help him, that he might go after my father or mother or brothers." "Cooperate" and "help" in this context, however, referred to possibly assisting McCarver in getting out on bond, not confessing to Pronger's murder.

■ A confession may be excludable if obtained after a threat to a member of the defendant's family. However, there must be a showing that but for the threat or inducement, the confession might not have occurred. *Hall v. State,* 255 Ind. 606, 611, 266 N.E.2d 16, 19 (1971) ("[W]hen the threat to so charge and attempt to convict [the family member] is made ... to 'encourage' the appellant to make a full confession, we cannot say as a matter of law that that confession is given freely and voluntarily"). *See generally* Caroll J. Miller, Annotation, *Voluntariness of Confession as Affected by Police Statements That Suspect's Relatives Will Benefit by the Confession,* 51 A.L.R. 4TH 495 (1987 & Supp. 1997). That causal link is lacking here. If we accept Haak's testimony at face value, McCarver said he would punish, even kill, anyone who cooperated in the investigation of his drug enterprise. Haak feared McCarver because of his ability to carry out those threats. Whatever concern Haak may have had for the consequences of cooperating with

**2.** The parties appear to agree that McCarver was acting as a government agent at the time of both

conversations.

an investigation of McCarver, there is no basis to suggest that his confessions were in any way caused by that fear. In fact, when asked on both direct and cross-examination why he made the incriminating statements to McCarver, Haak testified that he was covering for Harth, whom Haak described as a close friend for many years. This was consistent with Haak's defense that Harth and Timothy Weaver (brother of Linda, discussed above) carried out the killing. In sum, Haak's own testimony contradicts his assertion in this appeal that he made the challenged statements in response to a threat or inducement from McCarver. To the extent he feared reprisals against members of his family, he has not shown any connection between those threats and his inculpatory statements. Accordingly, the decision that the confession was voluntary was not error.

Although the argument is not well developed, Haak appears to suggest that his Sixth Amendment right to counsel was violated because McCarver "deliberately elicited" incriminating statements from him.[3] The State responds that although Haak had been charged with an unrelated offense at the time of the conversation as cellmates, his Sixth Amendment rights with respect to the offenses here could not have been violated because he was not charged with murder and conspiracy to commit murder until six days later. The State is correct. The Sixth Amendment right to counsel does not proscribe the admission of evidence of uncharged crimes still under investigation. *McNeil v. Wisconsin*, 501 U.S. 171, 175–76, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991). The Sixth Amendment therefore did not bar the admission of any statements Haak made before he was charged in this case.

## II. Restrictions on Witness Questioning

Haak argues that the trial court erred in limiting his ability to question several witnesses, mostly on cross-examination. These restrictions are reviewed for an abuse of discretion. *Marshall v. State*, 621 N.E.2d 308, 316 (Ind.1993).

### A. State of mind testimony

The trial court restricted Haak's ability to establish his fear of McCarver through the testimony of other witnesses. Haak maintains he should have been permitted to ask his father whether the latter sought protection from the federal government or expressed his fear of McCarver to Haak. In a related contention, Haak also asserts error in refusing to permit questioning of McCarver about an incident in which McCarver and Linda Weaver (McCarver's girlfriend at the time) purportedly threatened and kidnapped an associate they thought had become a government informant. Haak contended at trial that his knowledge of McCarver's dealings with the informant caused him to fear McCarver and, presumably, confess at the Hammond Federal Building to a crime he did not commit.

The father's testimony was excluded on the ground that it bore on Haak's state of mind—evidence the trial court concluded had to be presented first by Haak himself. Similarly, the trial court ruled that McCarver's testimony would be admissible only if Haak, who had not yet taken the stand, testified to a fear of McCarver and the State challenged that assertion. In both rulings the trial court reasoned that Haak could not establish his state of mind through the testimony of other witnesses. That is correct as to accounts of what was going through Haak's head. However, there is no bar to descriptions of surrounding facts and circumstances within the witness's personal knowledge that may bear on assessing Haak's state of mind. The prohibition is only against testimony that seeks to draw inferences as to another's intent, belief, or feelings for the trier of fact. Ind.Evidence Rule 701; *Weaver v. State*, 643 N.E.2d 342, 345 (Ind.1994); *Johnson v. State*, 584 N.E.2d 1092, 1104 (Ind.1992). These conclusions are left for the factfinder to draw based on the description of the observable facts. 13 ROBERT LOWELL MILLER, JR., INDIANA PRACTICE § 701.115, at 336 (2d ed.1995). Thus, to the extent Haak's fear of McCarver was relevant, Haak should have been permitted to present through other witnesses particular facts and circumstances

---

**3.** Haak raises no similar claim under the Indiana  Constitution.

bearing on that point. The jury then would have been left to draw its own conclusions as to Haak's state of mind based on that testimony.

■ The question here is whether the trial court abused its discretion by requiring that Haak put his state of mind in issue before other witnesses could testify to that point. Because defense counsel assured the trial court that Haak would testify in any event, this presents no serious issue. Trial courts have wide latitude in controlling the order of proof, *Isaacs v. State,* 659 N.E.2d 1036, 1042 (Ind.1995), and may impose restrictions to, among other things, "make the interrogation and presentation effective for the ascertainment of truth" and "avoid needless consumption of time." Ind.Evidence Rule 611(a). If the jury had no reason to suspect or conclude when McCarver and the father testified that Haak feared McCarver—and we are directed to no evidence to the contrary—the relevance of their testimony detailing only the observable facts (without any inferences as to state of mind for the reasons discussed) might have been unclear. Jurors would have learned of collateral facts (the father's fear of McCarver and McCarver's threats to an informant) without knowing why the evidence was being offered (to show that Haak incriminated himself at the Hammond Federal Building because he feared McCarver, not because he committed the crime). Because the potential for confusion, if not waste of time, was reduced by this order of proof, the trial court did not abuse its discretion.[4]

■ Finally, Haak challenges restrictions on his ability to question federal drug enforcement agent Vincent Balbo on direct examination. Balbo testified at McCarver's 1992 detention hearing in federal court that McCarver threatened every informant who cooperated with law enforcement authorities against him. Haak argues that he feared McCarver because of the threats that were the subject of Balbo's 1992 testimony. The trial court ruled that because Haak did not testify that he was aware of all of these threats, Balbo could be questioned only about the threats within Haak's knowledge—i.e., any threats to Haak's father and the informant who was purportedly kidnapped. Since Haak could not have feared McCarver based on things he did not know, this was an entirely sensible way to proceed. Haak does not maintain that he was barred from inquiring into any threats within his ken. There was no error.

### B. *Miscellaneous contentions*

■ Haak next raises a number of challenges related to the scope of cross-examination. With respect to these, he makes only vague assertions as to relevance and does not argue that the restrictions affected the trial outcome. According to Haak, the testimony that was barred would have shed light on his relationship with McCarver, Harth and the Weavers, or further illustrated his fear of McCarver. First, the State objected when Haak asked Harth why Klebs sought Harth's assistance in arranging a murder for hire. In a sidebar to discuss the objection, the trial court expressed concern that Haak was trying to get Harth's criminal record (apparently a voluntary manslaughter conviction) before the jury. We agree with the State that Haak has not shown how Klebs's motives for seeking Harth's help were relevant to any issue in this case. Second, Haak was not permitted to ask Linda Weaver whether she

---

4. There is no claim raised that the trial court's procedure either forced an accused to take the stand who otherwise might not have testified, or exacted a penalty for remaining silent. Any such claim raises an issue of possible infringement on Fifth Amendment rights. *Brooks v. Tennessee,* 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972) (statute that required defendant to be the first defense witness or forfeit his right to testify violated Fifth Amendment right to be free from self-incrimination). As the Supreme Court reasoned in *Brooks,* a willful and fully informed decision to testify often cannot be made without having some idea of the strength of the evidence on both sides. Taking the stand raises a variety of risks for innocent and guilty alike. *Brooks* established that the defendant enjoys at least some degree of constitutional right to assess the strength of the evidence before taking the stand. This is precluded if the defendant is forced to testify first on any subject. Accordingly, if the order of proof may affect the defendant's decision to testify, trial courts must be sensitive to any Fifth Amendment considerations that may be implicated.

had any discussions with Haak's father about the latter's burn injuries. Haak maintained at trial that this evidence illustrated Linda's motive—fear of McCarver—for moving to Florida. Even if probative on that point, Linda's reasons for moving to Florida were irrelevant. Third, Haak was not permitted to ask Timothy Weaver why he was arrested in Georgia in 1988, an event referred to but not developed on direct examination. There was no error because Haak has not shown how the nature of the alleged offense (gun possession) was pertinent to any material fact. Finally, Haak was not permitted to question Timothy about a pretrial comment Timothy allegedly made to Linda about his role in the killing. This presents no basis for reversal because defense counsel agreed that the query was better left for rebuttal by calling Linda to the stand if necessary.

### III. Amendment to the Charging Information

■ Haak asserts that the trial court erred in allowing the charging information to be amended approximately three weeks before trial.[5] Conviction of conspiracy requires proof that the defendant or a co-conspirator performed an "overt act" in furtherance of the unlawful agreement. IND.CODE § 35–41–5–2(b) (1993). The amended information deleted one of eight overt acts allegedly taken in furtherance of the conspiracy—that Haak "shot and killed" Pronger "on or about" August 15, 1988.

#### A. *Proper considerations in applying Indiana Code § 35–34–1–5*

Amendments to the charging instrument are governed by Indiana Code § 35–34–1–5, which broadly distinguishes between amend-

ments of "immaterial defect" or "form" and amendments of "substance."[6] The former by virtue of subsections (a) and (c) may be made at any time if there is no prejudice to the defendant. Pursuant to subsection (b), the latter require written notice to the defendant of the proposed change and may not occur after specified times in advance of the omnibus date. The omnibus date here was in 1994 and the amendment was in 1996. Thus, if the amendment was of substance, or prejudicial to the defendant even if of form, it was impermissible under the statute. The form/substance distinction has been explained as follows:

> If the defense under the original information would be equally available after the amendment is made and the accused's evidence would be equally applicable to the information in one form as in the other, the amendment is one of form and not of substance. An amendment is of substance only if it is essential to the making of a valid charge of the crime.

*Sharp v. State*, 534 N.E.2d 708, 714 (Ind. 1989) (citation omitted).

#### B. *Haak's claim*

■ Haak relies on *Abner v. State*, 497 N.E.2d 550 (Ind.1986), a case construing the predecessor statute, for the proposition that allowing the deletion of the killing as an overt act was error. In *Abner*, an information alleging conspiracy to commit murder was amended six days before trial to change the overt act from a shooting to pushing the victim into a river. *Id.* at 553. The conviction was reversed on the ground that this was a substantial alteration of an essential fact amounting to an impermissible shift in the State's theory of the case. *Id.* at 554.[7]

---

5. For this issue to be available on appeal, the defendant must object to the request to amend and, if the objection is overruled, seek a continuance to prepare his or her defense in light of the change. *Wright v. State*, 690 N.E.2d 1098, 1104 (Ind.1997). The record reflects that Haak objected to the amendment but it is unclear whether he asked for a continuance and neither party addresses the point. In any event, because the State does not argue that the claim is waived, we address Haak's challenge to the amendment on the merits.

6. The discussion here of Indiana Code § 35–34–1–5 deals with the current version of the statute. Although the statute has been amended since the crimes in this case, the change is not material to the issues presented today. 1993 Ind.Acts, P.L. 164, § 7 (adding subsection (c) governing filing of habitual offender allegations).

7. The rule that the charging instrument may not be amended to base the prosecution on a different theory dates to the predecessor statute, which explicitly barred amendments having that effect. IND.CODE § 35–3.1–1–5(c) (1976) ("[A]n indictment or information shall not be amended in any

However, the change here did not surprise Haak with a new factual allegation that he was unprepared to counter as trial approached. Because the amendment only reduced the possible grounds on which the jury could find one element of conspiracy, there was no unfair·surprise. *Cf. Sides v. State,* 693 N.E.2d 1310, 1312–13 (Ind.1998) (deletion of the word "auto" from "auto theft" in habitual offender allegation was non-substantive and did not prejudice defendant); *Taylor v. State,* 663 N.E.2d 213, 218 (Ind.Ct.App.1996) (deletion of "mere surplusage" from the information was not error), *trans. denied.* In the parlance of *Sharp,* the amendment did not cause Haak to lose any defenses or affect the application of his evidence to the crimes charged; nor was it essential to the making of a criminal charge. *Sharp,* 534 N.E.2d at 714. The change was not of substance, and the amendment therefore was permissible at any time if not prejudicial to Haak. IND. CODE § 35–34–1–5(c) (1993).

■■■ Haak's real claim as to prejudice is not that he was caught off guard, but rather that the amendment was a prerequisite to the State's obtaining convictions on both counts. He asserts that because the information alleged the killing as an overt act before it was (impermissibly) amended, murder and conspiracy to commit murder under the facts of this case are the "same offense" for purposes of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution.[8] Because it is presumed in the absence of a contrary intent that the legislature did not intend to attach cumulative penalties to the same offense, *Grinstead v. State,* 684 N.E.2d 482, 485 (Ind.1997), the argument goes, conviction on both counts is barred. Even if we accepted the premise of this contention—that Haak was or should have been tried on an information alleging Pronger's murder as an overt act—there would be no error because the inquiry in determining whether two offenses are the "same" for federal double jeopardy purposes focuses on the statutes defining the crimes, not the charging instrument. If each offense contains at least one statutory element that the other does not, the offenses are distinct for federal Fifth Amendment purposes and there is no bar on conviction and sentence on both. *Games v. State,* 684 N.E.2d 466, 477 (Ind. 1997), *modified on reh'g,* 690 N.E.2d 211 (Ind.1997), *petition for cert. filed,* —— U.S.L.W. —— (U.S. May 13, 1998) (No. 97–9143). Murder and conspiracy to commit murder are separate offenses under this analysis. *Compare* IND.CODE § 35–42–1–1 (1988) *with* IND.CODE § 35–41–5–2 (1993). Because the·federal double jeopardy claim fails, the amendment to the charging information deleting the killing as an overt act did not prejudice Haak's substantial rights. IND. CODE § 35–34–1–5(c) (1993).

## IV. Sufficiency ·of the Evidence

■■■ Finally, Haak contends that there was insufficient evidence to support the convictions. In reviewing a sufficiency claim, we do not reweigh the evidence or assess the credibility of witnesses. If the probative evidence and reasonable inferences drawn from

respect which changes the theory or theories of the prosecution as originally stated"). "Theory of the case" has been defined as "facts which constitute the essential elements of the crime charged." *Abner,* 497 N.E.2d at 553. Although the current statute contains no analogous provision, the decisional law has retained the prohibition on changes in the theory of the case. *Wright v. State,* 593 N.E.2d 1192, 1197 (Ind.1992) (attributing the doctrine to subsection (a)(9) and *Sharp v. State,* discussed above). *But cf. Kindred v. State,* 540 N.E.2d 1161, 1170 (Ind.1989) (noting difference between predecessor and current statute and describing cases construing subsection (c) of the former as "no longer controlling"); *Trotter v. State,* 429 N.E.2d 637, 640–41 (Ind. 1981) (questioning "theory of the case" doctrine and arguing that amendments changing underly-

ing theory or identity of crime charged should be allowed if they do not prejudice the accused).

8. Citing *Buie v. State,* 633 N.E.2d 250 (Ind.1994) without a separate Indiana constitutional argument, Haak contends that the Indiana Constitution also requires a comparison of the manner in which the offenses were charged. We recently emphasized that *"Buie* is insufficient to support a claim of double jeopardy under the Indiana Constitution." *Valentin v. State,* 688 N.E.2d 412, 413 (Ind.1997). Under these conditions, we analyze the claim only under federal double jeopardy principles. *Games v. State,* 684 N.E.2d 466, 473 n. 7 (Ind.1997), *modified on reh'g,* 690 N.E.2d 211 (Ind.1997),· *petition for cert. filed,* —— U.S.L.W. —— (U.S. May 13, 1998) (No. 97–9143).

the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt, the judgment will not be set aside. *Wooden v. State,* 657 N.E.2d 109, 111 (Ind.1995). Larry Harth testified that he was approached by Murray Klebs about finding someone who would kill Pronger. Harth contacted Haak, who agreed to do the killing for $10,000. Acting as a middleman for Klebs, Harth gave Haak the money ($3000 in advance and $7000 afterwards). On the night of the killing, Harth dropped Haak off near Pronger's house and later helped Haak destroy the gun at Harth's house, where Haak indicated that he had shot Pronger as planned. Alvin McCarver, Timothy Weaver, and Linda Weaver all testified that Haak told them of his involvement within weeks of the event. This evidence alone, if credited, was sufficient to support the convictions. It was bolstered by the recorded conversations between Haak and McCarver at the Hammond Federal Building in 1994 in which Haak discussed his role in the murder-for-hire scheme.

Haak suggests that his accusers were not worthy of belief because all testified "by virtue of deals with the federal government and grants of immunity by the State." Although these factors are fair game in assessing witness credibility, that role was for the jury, which was aware of the conditions under which each witness testified because the agreements were admitted into evidence without objection. We decline Haak's invitation to second-guess the jury's apparent decision to credit the testimony of the accusing witnesses and to disbelieve Haak's version of events.

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.