

**FILED**

Jan 22 2021, 9:19 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Amy E. Karozos
Public Defender of Indiana

Lindsay Van Gorkom
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| James C. Absher,<br>*Appellant-Petitioner,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Respondent* | January 22, 2021<br><br>Court of Appeals Case No.<br>20A-PC-1227<br><br>Appeal from the Floyd Circuit<br>Court<br><br>The Honorable Maria D. Granger,<br>Special Judge<br><br>Trial Court Cause No.<br>22C01-1311-PC-12 |

**Crone, Judge.**

## Case Summary

[1] Following his convictions for Count 1, class A felony child molesting, Count 2, class A felony child molesting, and Count 3, class C felony child molesting, James C. Absher sought and was denied post-conviction relief (PCR). He now

appeals the denial of his PCR petition, arguing that he is entitled to relief because his trial and appellate counsel provided ineffective assistance. He asserts that his trial counsel provided ineffective assistance in two ways: (1) failing to object to an untimely amendment to the charging information that added Counts 2 and 3 and (2) failing to object to the prosecutor's comments during closing argument. We agree that Absher's trial counsel provided ineffective assistance by failing to object to the untimely amendment to the charging information, and therefore the post-conviction court improperly denied relief on this claim. However, we reach the opposite conclusion with respect to Absher's claim regarding his trial counsel's failure to object to the prosecutor's comments. Absher also asserts that his appellate counsel provided ineffective assistance by failing to raise a claim that the evidence was insufficient to support his conviction for Count 2. We agree.[1] Accordingly, we affirm in part, reverse in part, and remand with instructions to vacate the convictions and sentences for Counts 2 and 3.

## Facts and Procedural History

[2] Absher and Laura Rawlings lived together and were involved in a romantic relationship from 1997 until 2001. They had a daughter together, J.L. By May of 2004, Absher and Rawlings were separated. Rawlings lived with five-year-

---

[1] Because of our resolution of these issues, we need not address Absher's arguments that his appellate counsel provided ineffective assistance by failing to competently argue that the untimely amendment to the charging information was fundamental error and by failing to raise the issue that his 100-year aggregate sentence was inappropriate.

old J.L. and Rawlings's two other children in a two-story house. Absher sometimes visited the children at the house. On May 26, 2004, Absher came to Rawlings's house to visit and spent the night. Absher, Rawlings, and the children slept in the same bedroom, with Absher and Rawlings sleeping on the floor, and the children sleeping on the bed. Trial Tr. Vol. 1 at 54.

[3] The following morning, Absher and Rawlings woke up and went downstairs to the kitchen. Absher offered to go back upstairs, wake up J.L., and change the youngest child's diaper. After Absher had been gone about fifteen minutes, Rawlings decided to go upstairs because she thought it was taking too long to change a diaper. *Id.* at 60-61. When she got upstairs, she looked into the bedroom through the open door and saw J.L. lying on her back on the floor with her underwear pulled down and her legs apart. *Id.* at 63. Absher was on his knees straddling J.L. *Id.* at 64. His jeans and underwear were pulled down below his knees. *Id.* at 64-65. His right hand was holding his penis, and his left hand was on J.L.'s lower abdomen, with his fingers toward her stomach and his thumb touching her "vagina area." *Id.* at 66. Rawlings yelled at Absher and pushed him away. Absher asked her not to call the police and promised it would not happen again. *Id.* at 55. Rawlings said that that was "not good enough" and called the police. *Id.* When the police arrived, Absher fled.

[4] New Albany Police Department Sergeant Sherri Knight interviewed J.L. The audiotape of the interview was admitted at trial without objection. J.L. told Sergeant Knight that Absher touched the inside of her "coochie[,]" J.L.'s term for her sex organ, with his "weenie." Trial Confidential Ex. Vol. 1 at 51-52;

Trial Tr. Vol. 1 at 227-28. J.L. said that when Absher put his weenie in her coochie, it "felt bad." Trial Confidential Ex. Vol. 1 at 52; Trial Tr. Vol. 1 at 229-30. Sergeant Knight asked J.L. whether Absher's weenie touched any other part of J.L.'s body, and she said no. Trial Confidential Ex. Vol. 1 at 52; Trial Tr. Vol. 1 at 230. Sergeant Knight also asked J.L. whether any other part of Absher's body touched her coochie, and she said no. Trial Confidential Ex. Vol. 1 at 52; Trial Tr. Vol. 1 at 230. Finally, Sergeant Knight asked J.L. if anyone else had ever touched her coochie, and she said no. Trial Confidential Ex. Vol. 1 at 54; Trial Tr. Vol. 1 at 230.

[5] After her interview with Sergeant Knight, J.L. was examined by sexual assault nurse examiner Kathy Scifres. J.L. explained to Scifres that Absher touched her with his weenie two times, pointing to her "genitalia area" to indicate where Absher had touched her. Trial Tr. Vol. 1 at 110-11. During Scifres' examination of J.L., Scifres discovered a three-millimeter vertical abrasion "oozing a little bit of fluid" and another horizontal abrasion in the labial area, both of which were recent. *Id.* at 118-19. Scifres took swabs of J.L.'s genitals and collected her clothing as evidence.

[6] Police located Absher, and Sergeant Knight interviewed him. His interview was recorded and admitted at trial without objection, and a transcription of the recording was admitted as Defendant's Exhibit 4. Absher told Sergeant Knight that after he woke J.L. up that morning, he tickled her around her belly button under her shirt. Trial Confidential. Ex. Vol. 1 at 60. He admitted that he touched J.L.'s private area with his hand but claimed that it was unintentional.

*Id.* at 64-65. When Sergeant Knight told him that J.L. said that he touched her private area with his penis, Absher stated that he did not remember that happening, but he guessed that J.L. was telling the truth. *Id.* at 65. During a portion of their conversation that was not recorded, Absher told Sergeant Knight many times that "if [J.L.] said I did it than [sic] I did it[.]" Trial Tr. Vol. 2 at 279.

[7] On May 28, 2004, the State charged Absher with one count of class A felony child molesting, alleging that Absher, "a person of at least twenty-one years of age, did perform sexual intercourse with [J.L.], a child under the age of fourteen, to wit: 5." Direct Appeal App. Vol. 1 at 26.

[8] At the initial hearing, the trial court set the omnibus date for July 27, 2004. Trial was originally scheduled for August 9, 2004, but following numerous continuances, it was rescheduled for June 12, 2006. On June 9, 2006, the State filed a motion to amend the charging information to designate the original class A felony child molesting count as Count 1 and add two new counts. In Count 2, the State charged Absher with class A felony child molesting, alleging that he performed deviate sexual conduct with J.L. by placing his mouth on her sex organ. *Id.* at 114. In Count 3, the State charged Absher with class C felony child molesting, alleging that he fondled or touched J.L. with the intent to arouse or satisfy his sexual desires. *Id.* Absher did not object to the motion to amend. On the same date, the State made a plea offer to Absher. On June 13, 2006, Absher refused the State's plea offer, and the trial court granted the State's motion to amend. The trial court also granted Absher's request for a

continuance. Trial commenced on August 15, 2006. On August 18, 2006, the jury found Absher guilty as charged. On September 18, 2006, the trial court sentenced Absher to an executed term of fifty years each on Counts 1 and 2, to be served consecutive to each other, and eight years on Count 3, to be served concurrent with Count 1.

[9] Absher brought a direct appeal of his convictions, arguing that the trial court erroneously allowed the State to amend its charging information to add Counts 2 and 3 after the expiration of the time limit set forth in Indiana Code Section 35-34-1-5. *Absher v. State*, 866 N.E.2d 350 (Ind. Ct. App. 2007) (*Absher I*). In summary, the *Absher I* court held that the trial court erred by granting the State's motion to amend. *Id*. at 354. However, because Absher's trial counsel failed to preserve the error for appellate review with a timely objection, Absher was required to establish fundamental error. *Id*. at 354-55. The *Absher I* court concluded that Absher failed to provide cogent argument with citation to authority to support his legal conclusion that the error was fundamental and affirmed his convictions.[2] *Id*. at 356.

---

[2] We note that the *Absher I* court stated briefly that Absher failed to provide cogent argument on the issue of ineffective assistance of trial counsel. 866 N.E.2d at 356. If a claim of ineffective assistance is raised on direct appeal, "the appellate resolution of the issue acts as *res judicata* and precludes its relitigation in subsequent post-conviction relief proceedings." *Jewell v. State*, 887 N.E.2d 939, 941 (Ind. 2008). However, Absher did *not* raise this issue in his direct appeal. Rather, it appears that the State raised the question in its appellee's brief by asserting that Absher's trial counsel had not provided ineffective assistance. Absher filed a reply brief, but it did not address the State's assertion regarding his trial counsel's effectiveness. At the post-conviction hearing, the State stipulated that Absher's opportunity to raise ineffective assistance of trial counsel had not been foreclosed by Absher's appellate counsel in the direct appeal. PCR Tr. Vol. 2 at 111-12, PCR Appellant's App. Vol. 2 at 159. In this appeal, the State does not contend that Absher is barred from

[10]  In October 2013, Absher, pro se, filed a PCR petition, which, after two amendments by counsel, took its final form in December 2017. In June 2018, Judge J. Terrence Cody held an evidentiary hearing on Absher's PCR petition, at which Absher's trial counsel William Eastridge and Lisa Glickfield and his appellate counsel J. Patrick Biggs testified. In September 2018, the parties filed proposed findings of fact and conclusions of law. In December 2019, Absher filed a request for a ruling. In January 2020, Absher filed a praecipe for withdrawal of submission pursuant to Indiana Trial Rules 53.1(E) and 53.2(E). In February 2020, the Indiana Supreme Court entered an order withdrawing the matter from Judge Cody and appointing Maria D. Granger as special judge. On June 3, 2020, Special Judge Granger issued an order denying Absher's PCR petition. This appeal ensued.

## Discussion and Decision

[11]  "Post-conviction proceedings are civil proceedings in which a defendant may present limited collateral challenges to a conviction and sentence." *Gibson v. State*, 133 N.E.3d 673, 681 (Ind. 2019) (citing Ind. Post-Conviction Rule 1(1)(b)), *cert. denied* (2020). "The scope of potential relief is limited to issues unknown at trial or unavailable on direct appeal." *Id*. A defendant who files a petition for post-conviction relief "bears the burden of establishing grounds for

raising a claim of ineffective assistance of trial counsel. Accordingly, we address his claims regarding his trial counsel.

relief by a preponderance of the evidence." Ind. Post-Conviction Rule 1(5); *Humphrey v. State*, 73 N.E.3d 677, 681 (Ind. 2017). Because the defendant is appealing from the denial of post-conviction relief, he is appealing from a negative judgment:

> Thus, the defendant must establish that the evidence, as a whole, unmistakably and unerringly points to a conclusion contrary to the post-conviction court's decision. In other words, the defendant must convince this Court that there is *no* way within the law that the court below could have reached the decision it did.

*Wilkes v. State*, 984 N.E.2d 1236, 1240 (Ind. 2013) (citations and quotation marks omitted).

[12] Generally, we review the post-conviction court's factual findings for clear error, neither reweighing the evidence nor judging the credibility of witnesses. *Hinesley v. State*, 999 N.E.2d 975, 981 (Ind. Ct. App. 2013), *trans. denied* (2014). Here, the post-conviction court made its ruling on a paper record, and thus we are reviewing the same information that was available to the post-conviction court. In such cases, the appellate court owes no deference to the lower court's findings. *See Baysinger v. State*, 835 N.E.2d 223, 224 (Ind. Ct. App. 2005) (concluding that where trial court ruled on defendant's petition to file belated notice of appeal based on a paper record, appellate court owed no deference to lower court's findings), *trans. denied* (2006). Therefore, we review the denial of Absher's PCR petition de novo. *Id.*

[13] Absher maintains that he is entitled to post-conviction relief because he was denied the right to effective assistance of trial and appellate counsel guaranteed by the Sixth Amendment to the United States Constitution. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984) ("[T]he right to counsel is the right to effective assistance of counsel.") (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). We evaluate a defendant's claim of ineffective assistance of counsel using the two-part test articulated in *Strickland*. *Ward v. State*, 969 N.E.2d 46, 51 (Ind. 2012). Under this test, the defendant must demonstrate (1) that counsel's performance was deficient based on prevailing professional norms; and (2) that the deficient performance prejudiced the defense. *Id*.

[14] In assessing whether counsel's performance was deficient, we note that "[c]ounsel is afforded considerable discretion in choosing strategy and tactics, and we will accord that decision deference." *Id*. (quoting *Pruitt v. State*, 903 N.E.2d 899, 906 (Ind. 2009)). Indeed, there is a strong presumption "that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Weisheit v. State*, 109 N.E.3d 978, 983 (Ind. 2018), *cert. denied* (2019). A defendant must offer strong and convincing evidence to overcome this presumption. *Ritchie v. State*, 875 N.E.2d 706, 714 (Ind. 2007). Isolated poor strategy, inexperience, or bad tactics does not necessarily constitute ineffective assistance. *Hinesley*, 999 N.E.2d at 982.

[15] As for the prejudice prong of the *Strickland* test, a defendant need only show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Middleton v. State*, 72 N.E.3d 891,

891 (Ind. 2017) (emphasis and citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 891-92 (quoting *Strickland*, 466 U.S. at 694). "Failure to satisfy either prong will cause the claim to fail[, and] most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone." *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002) (citation omitted).

## Section 1 – Trial counsel provided ineffective assistance by failing to object to the State's motion to amend the charging information.

Absher first argues that his trial counsel's failure to object to the amendment to the charging information constitutes deficient performance because the amendments were clearly prohibited by Indiana Code Section 35-34-1-5(b). He further asserts that he was prejudiced by counsel's failure to object because had trial counsel preserved the issue for appeal, his convictions for the two counts added by the amendment would have been reversed on direct appeal pursuant to *Fajardo v. State*, 859 N.E.2d 1201 (Ind. 2007). The State contends that trial counsel's failure to object was a strategic decision based on prevailing professional norms at the time, and therefore his failure to object cannot be considered deficient performance.

To resolve Absher's claim, we begin by reviewing the text of Section 35-34-1-5, which governs amendments to a charging information, two relevant Indiana Supreme Court cases, and the resolution of Absher's direct appeal. Turning first to the text of the statute, we observe that when Absher committed his

offenses, the State moved to amend the charging information, and Absher's case was up on direct appeal, Section 35-34-1-5(a) permitted an amendment to the charging information at any time "because of any immaterial defect" and listed nine such examples, including "(9) any other defect which *does not prejudice the substantial rights of the defendant*." (Emphasis added.) Similarly, subsection 5(c) permitted, "at any time before, during or after the trial, ... an amendment to the indictment or information in respect to any defect, imperfection, or omission in form which *does not prejudice the substantial rights of the defendant*." (Emphasis added.) In contrast, subsection 5(b) provided the following time limitations:

> (b) The indictment or information *may be amended in matters of substance or form*, and the names of material witnesses may be added, by the prosecuting attorney, upon giving written notice to the defendant, at any time up to:
>
> (1) thirty (30) days if the defendant is charged with a felony; or
>
> (2) fifteen (15) days if the defendant is charged only with one (1) or more misdemeanors;
>
> before the omnibus date.

(Emphasis added.)

[18]   In *Haak v. State*, 695 N.E.2d 944 (Ind. 1998), our supreme court reviewed Haak's claim that an amendment to the charging information made well after

the omnibus date violated Section 35-34-1-5.  In so doing, the *Haak* court

explained the application of the statute as follows:

> Indiana Code § 35-34-1-5 … broadly distinguishes between
> amendments of "immaterial defect" or "form" and amendments
> of "substance."  The former by virtue of subsections (a) and (c)
> may be made at any time if there is no prejudice to the defendant.
> Pursuant to subsection (b), the latter require written notice to the
> defendant of the proposed change and may not occur after
> specified times in advance of the omnibus date. The omnibus
> date here was in 1994 and the amendment was in 1996. Thus, if
> the amendment was of substance, or prejudicial to the defendant
> even if of form, it was impermissible under the statute.

*Id*. at 951 (footnote omitted).  The *Haak* court explained the form/substance

distinction as follows:

> If the defense under the original information would be equally
> available after the amendment is made and the accused's
> evidence would be equally applicable to the information in one
> form as in the other, the amendment is one of form and not of
> substance. An amendment is of substance only if it is essential to
> the making of a valid charge of the crime.

*Id*. (quoting *Sharp v. State*, 534 N.E.2d 708, 714 (Ind. 1989)*, cert. denied* (1990)).

The *Haak* court concluded that the amendment at issue, which involved the

deletion of an overt act in furtherance of a conspiracy, was one of form, not

substance, and was permissible at any time if not prejudicial to Haak.  *Id*. at

952. The *Haak* court concluded that the amendment did not prejudice Haak's

substantial rights, and thus the trial court did not err in allowing the

amendment three weeks before trial.  *Id*.

[19]   On January 16, 2007, while Absher's direct appeal was pending, our supreme court handed down *Fajardo*, 859 N.E.2d 1201, wherein the court reversed Fajardo's conviction due to a violation of Section 35-34-1-5.  There, the supreme court concluded that the trial court abused its discretion by granting, over defense counsel's objection, the State's motion to amend the charging information to add a count of class A felony child molesting.  *Id*. at 1208.  In reaching this conclusion, the *Fajardo* court considered the text of Section 35-34-1-5 and described its application as follows:

> This statutory language … conditions the permissibility for amending a charging information upon whether the amendment falls into one of three classifications: (1) amendments correcting an *immaterial defect*, which may be made at any time, and in the case of an unenumerated immaterial defect, only if it does not prejudice the defendant's substantial rights; (2) amendments to *matters of form*, for which the statute is inconsistent, subsection (b) permitting them only prior to a prescribed period before the omnibus date, and subsection (c) permitting them at any time but requiring that they do not prejudice the substantial rights of the defendant; and (3) amendments to *matters of substance*, which are permitted only if made more than thirty days before the omnibus date for felonies, and more than fifteen days in advance for misdemeanors

*Id*. at 1204-05 (citing *Haak*, 695 N.E.2d at 951).  "Therefore," the *Fajardo* court explained, "the first step in evaluating the permissibility of amending an indictment or information is to determine whether the amendment is addressed to a matter of substance or one of form or immaterial defect."  *Id*. at 1207.

[20]     The *Fajardo* court then observed that although the distinction between matters of substance and those of form was important in determining whether an amendment was permissible under Section 35-34-1-5, the manner in which Indiana courts had applied the distinction had varied over the years. Specifically, the *Fajardo* court noted that after this version of subsection 5(b) had been enacted by the legislature in 1982, "[e]nsuing case law … ha[d] been *inconsistent and conflicting*, often reflecting the practice and procedure under prior statutes, or imprecisely disregarding the subsection 5(b) timeliness requirement for amendments to substance in favor of the absence of prejudice requirement that subsections 5(a)(9) and 5(c) apply only to amendments of form." *Id*. at 1206 (emphasis added). The *Fajardo* court identified multiple supreme court and appellate court cases that "permitted amendments related to matters of substance simply on grounds that the changes did not prejudice the substantial rights of the defendant, without regard to whether or not the amendments were untimely[,]" and cases that "ha[d] not focused upon whether the challenged amendment was one of form or substance, but ha[d] employed components of the substance/form test (whether defense equally available and evidence equally applicable, and whether amendment not essential to making a valid charge) to assess whether the defendant's substantial rights were prejudiced."[3]

---

[3] Only one of the supreme court cases identified in *Fajardo* was handed down after *Haak*, and that case was *Brown v. State*, 728 N.E.2d 876 (Ind. 2000), *abrogated by Fajardo*, 859 N.E.2d 1201. The amendment at issue in *Brown* was sought by the State after the close of its case in chief. In determining whether the amendment was permissible, our supreme court relied on Section 35-34-1-5(c) and applied components of the substance/form test to conclude that "the availability of Brown's defense and the applicability of the evidence

*Id*. at 1206-07. The *Fajardo* court expressly held that the methodology employed in those cases did not comply with Section 35-34-1-5. *Id*. at 1207. Significantly, the *Fajardo* court made clear that subsection 5(b) prohibited "any amendment as to matters of substance unless made thirty days before the omnibus date for felonies and fifteen days before the omnibus date for misdemeanors." *Id*. (footnote omitted). Specifically, "as to an amendment relating to matters of substance, the statute is clear: the only prerequisite is that it must be filed the specified number of days before the omnibus date, pursuant to subsection 5(b)." *Id*. (citing *Haak*, 695 N.E.2d at 951).

[21] The *Fajardo* court next addressed the amendment to Fajardo's charging information and concluded that the addition of an entirely new count of class A felony child molesting to an information that originally charged only one count of class C felony child molesting was an amendment of substance, which was permissible only up to thirty days before the omnibus date. *Id*. at 1208. Because the amendment was sought after the omnibus date, the court concluded that it failed to comply with Section 35-34-1-5. *Id.* Accordingly, the *Fajardo* court held that the "defendant's objection should have been sustained and the amendment denied." *Id*. The court vacated Fajardo's conviction and sentence for class A felony child molesting without further examining whether he suffered any prejudice caused by the amendment. *Id*.

under the original information was unaffected by the amendment," and thus "Brown's substantial rights were not affected." 728 N.E.2d at 880.

[22] As previously noted, *Fajardo* was decided while Absher's direct appeal was pending, and the amendment sought in both cases involved the addition of new counts of child molesting. In Absher's direct appeal, he relied on *Fajardo* to argue that the trial court erroneously permitted the State to amend the charging information to add a new count of class A felony child molesting and a new count of class C felony child molesting. In addressing his argument, the *Absher I* court concluded that the amendment was one of substance and not form because it added two new and separate offenses. 866 N.E.2d at 354. The court reasoned that "Absher's evidence addressed to disputing the original charge would not be equally applicable to dispute the specific conduct alleged in the separate additional charges sought to be added." *Id*. Also, the court added, the amendment was "unquestionably essential to making a valid charge of the crime." *Id*. (quoting *Fajardo*, 859 N.E.2d at 1208). The *Absher I* court then explained that because the amendment sought to modify the charging information as to matters of substance, it was permissible under Section 35-34-1-5(b) only up to thirty days before the omnibus date. The court then held that the amendment, sought almost two years after the omnibus date, was prohibited under subsection 5(b), and therefore the trial court should have denied the State's motion to amend. *Id.*

[23] Although the *Absher I* court held that the trial court erred, Absher was not successful in obtaining reversal of his convictions. The *Absher I* court noted a distinction between Absher's case and Fajardo's, namely, that while Fajardo had objected to the amendment and preserved the error for appeal, Absher had

not. *Id*. at 354. The *Absher I* court observed that *Fajardo* had not addressed the manner of appellate review of an alleged violation of Section 35-34-1-5(b) when the error had not been preserved. The *Absher I* court concluded that because Absher had not objected to the amendment, he would have to establish fundamental error to obtain reversal of the convictions. *Id*. at 354-55. As for whether fundamental error occurred, the court noted that Absher failed "to provide even a single cogent argument or citation to authority supporting his ultimate conclusions that his trial was unfair." *Id*. at 356. The court concluded that Absher "failed to successfully invoke the doctrine of fundamental error" by failing to provide a cogent argument with citation to authority. *Id*. As such, the court affirmed Absher's convictions.

[24] "Under [the law of the case] doctrine, the decision of an appellate court becomes the law of the case and governs the case throughout all of its subsequent stages, as to all questions which were presented and decided, both directly and indirectly." *Maciaszek v. State*, 113 N.E.3d 788, 791 (Ind. Ct. App. 2018). Accordingly, under the law of the case doctrine, our resolution of Absher's claim is informed by the *Absher I* court's determinations that the amendment was a matter of substance that violated Section 35-34-1-5(b), that the trial court erred in permitting the amendment, and that Absher failed to provide a cogent argument to support his claim of fundamental error.

[25] Notwithstanding that *Absher I* establishes that the trial court erred by granting the motion to amend, the State asserts that trial counsel did not provide deficient performance by failing to invoke the reasoning of the not-yet-published

*Fajardo* opinion to object to the amendments, citing *Reed v. State*, 856 N.E.2d 1189, 1197 (Ind. 2006). Appellee's Br. at 19; *see Reed*, 856 N.E.2d at 1197 ("[C]ounsel cannot be held ineffective for failing to anticipate or effectuate a change in existing law[, and] an ineffective assistance claim cannot be based upon counsel's failure to argue legal reasoning of cases not yet decided at the time of appeal.") (citations omitted). Absher contends that trial counsel was not required to anticipate or effectuate a change in existing law and that the need to object to the untimely amendment should have been apparent to trial counsel based on the clear text of the statute and our supreme court's opinion in *Haak*, 695 N.E.2d 944. In support of his contention, Absher points out that the Seventh Circuit Court of Appeals has granted habeas corpus relief to Indiana defendants who sought and were denied post-conviction relief on the basis of their attorneys' failure to object to the untimely amendments of their charging documents, citing *Jones v. Zatecky*, 917 F.3d 578, 579-80 (7th Cir. 2019) (*Jones III*).

[26] Jones was charged with battery in 2005 after attacking his partner. *Jones v. State*, 876 N.E.2d 389, 2007 WL 3287457, at *1 (Ind. Ct. App. 2007) (*Jones I*), *trans. denied* (2008). Nine days after the omnibus date, the State moved to amend the information to add a charge of criminal confinement. *Id*. at *2. Jones's attorney did not object, and the trial court granted the State's motion. Jones filed a direct appeal, arguing that the trial court erred by allowing the amendment in violation of Section 35-34-1-5. *Id*. Although Section 35-34-1-5 had been amended by the time of Jones's appeal, the *Jones I* court explained

that because Jones committed his offenses before the legislature amended the statute, its review of his claim was based on the prior statute.[4] *Id.* at *11 n.2. The *Jones I* court agreed with Jones that the trial court had erroneously permitted the amendment because the amendment was one of substance that was filed after the omnibus date. *Id.* at *3. However, the *Jones I* court concluded that because Jones's trial counsel had failed to object to the amendment on the same grounds, the issue was waived. *Id.* at *4. Jones filed for post-conviction relief, but his petition was denied. *Jones v. State*, 46 N.E.3d 501, 2016 WL 359276, at *2-3 (Ind. Ct. App. 2016) (*Jones II*), *trans. denied*.

[27] Jones then filed a pro se habeas corpus petition in federal court. In reviewing his petition, the Seventh Circuit stated,

> At the time of David Jones's arrest and prosecution in 2005, Ind. Code § 35-34-1-5 (1982) identified an "omnibus date" and allowed prosecutors to make substantive amendments to pending charges only up to 30 days before the omnibus date. Seven years earlier, in a case called *Haak v. State*, 695 N.E.2d 944, 951 (Ind. 1998), the Indiana Supreme Court had confirmed the strict nature of this deadline. Disregarding this rule, in Jones's case the state moved nine days *after* the omnibus date to amend the charging instrument to add a new and highly consequential charge of criminal confinement. Jones's attorney did not object to this untimely amendment, and Jones was ultimately convicted of the confinement charge.

---

[4] The *Jones I* court did not consider whether the amended version could be applied retroactively. As explained more fully below, our courts have applied it retroactively.

> According to the state, there is nothing unique about Jones's
> case. It tells us that defense attorneys around Indiana routinely
> ignored both the clear text of the statute and the *Haak* decision
> and allowed prosecutors to make untimely amendments. If that is
> an accurate account, it is hardly reassuring. For a lawyer to fail to
> take advantage of a clear avenue of relief for her client is no less
> concerning because many others made the same error—if
> anything, it is more so.

*Jones III*, 917 F.3d at 579-80 (footnote omitted).  Accordingly, the Seventh

Circuit concluded that based on the clear language of Section 35-34-1-5 and the

Indiana Supreme Court's opinion in *Haak*,[5] Jones had a strong argument for

dismissing one of the charges against him, but his trial counsel failed to pursue

it, and therefore his trial counsel's performance fell below the constitutional

minimum.  *Id*. at 581-82.

[28]     As for prejudice to Jones, the Seventh Circuit stated that it was "easy to find a

reasonable probability that counsel's error prejudiced Jones."  *Id*. at 583.  The

Seventh Circuit concluded that Jones's trial counsel's failure to object to the

amendment "doomed his appeal" because the *Jones I* court found that the

amendment was made in violation of Section 35-34-1-5, and "what killed the

argument in that court was waiver, not lack of merit."  *Id*. at 583.

---

[5] We note that the *Fajardo* court cited *Haak* when explaining the statutory language of Section 35-34-1-5.  See *Fajardo*, 859 N.E2d at 1205 (citing *Haak*, 695 N.E.2d at 951).  And the *Fajardo* court cited *Haak* when it stated, "as to an amendment relating to matters of substance, *the statute is clear*: the only prerequisite is that it must be filed the specified number of days before the omnibus date, pursuant to subsection 5(b)."  *Id*. at 1207 (emphasis added) (citing *Haak*, 695 N.E.2d at 951).

[29] The State does not acknowledge *Haak* or *Jones III* or respond to Absher's argument based on these cases. Although *Jones III* is not binding, we find it persuasive to the resolution of this case because of its striking similarity to the facts and procedural history of this case. In both cases, the defendant's trial counsel did not object to the State's motion to amend, and on direct appeal, the defendant's appellate counsel challenged the trial court's ruling to grant the State's motion. The direct appeals court in both cases concluded that the amendment at issue was one of substance that violated Section 35-34-1-5(b), and that the trial court erred by granting the amendment. In both cases, the appellate court did not reverse the conviction because the error had not been preserved for appellate review due to trial counsel's failure to lodge an appropriate objection.

[30] We conclude that based on the clear language of Section 35-34-1-5 and our supreme court's decision in *Haak*, Absher's trial counsel had a firm basis to object to the prosecutor's amendment to add two new counts and that he performed deficiently by failing to object to the amendment as one of substance that was untimely pursuant to Section 35-34-1-5. We further conclude that there is a reasonable probability that, but for trial counsel's deficient performance, the result of the proceeding would have been different.[6]

---

[6] The post-conviction court found that "Absher was unable to explain to the Court how the late amendment was fundamentally unfair" and "failed to show the Court how the performance of trial counsel in failing to object to the late amendment prejudiced his substantial rights." Appealed Order at 4. This was not the proper standard to determine whether Absher was prejudiced by his trial counsel's deficient performance.

*Middleton*, 72 N.E.3d at 891-92. Specifically, but for Absher's trial counsel's failure to object, the *Absher I* court would have vacated the convictions for the counts added by the amendment just as our supreme court did in *Fajardo*. Accordingly, we find both deficient performance and prejudice.

[31] In reaching this conclusion, we recognize that this case will likely be an outlier. Our legislature amended Section 35-34-1-5 four months after *Fajardo*, such that amendments of substance are permitted any time before trial so long as the defendant's substantial rights are not prejudiced. Ind. Pub. Law 178-2007 § 1 (eff. May 8, 2007). Whether the amended statute had retroactive application initially met with differing opinions from this Court, but a number of panels have now concluded that retroactive application of the new version of the statute does not violate the ex post facto provisions of the Indiana and United States Constitutions. *See Mays v. State*, 120 N.E.3d 1070, 1080-81 & n.4 (Ind. Ct. App. 2019) (*Mays II*) (citing cases that applied new version retroactively), *trans. denied*; *see also Baker v. State*, 922 N.E.2d 723, 728 (Ind. Ct. App. 2010), *aff'd on reh'g* 928 N.E.2d 890, *trans. granted*, *vacated in part* 948 N.E.2d 1169, 1173 (Ind. 2011) (summarily affirming retroactive application of Section 35-34-1-5). In *Mays II*, another panel of this Court rejected Mays's argument that his appellate counsel was ineffective. 120 N.E.3d at 1083. There, on direct appeal, Mays argued that the trial court erroneously granted the State's motion to amend the charging information, but his appellate counsel failed to provide an adequate record to permit meaningful appellate review of the claim. *Mays v. State*, No. 49A05-0609-CR-482, 2007 WL 2429254 (Ind. Ct. App. Aug. 29,

2007) (*Mays I*), *trans. denied*. The *Mays II* court agreed with Mays's claim that his appellate counsel performed deficiently by failing to provide an adequate record. *Mays II*, 120 N.E.3d at 1080. However, the court concluded that Mays was not prejudiced by his appellate counsel's deficient performance because when his direct appeal was decided, Section 35-34-1-5 had already been amended, *Fajardo* was no longer good law, and the *Mays I* court would have applied the new version of the statute had it addressed the issue on the merits. *Id*.

[32]     Absher's case is distinguishable from *Mays II*. Mays's direct appeal was decided almost four months after the new version of the statute became effective, and his claim was not addressed on the merits. In contrast, the *Absher I* court addressed Absher's claim on the merits, applying *Fajardo* and the prior version of Section 35-34-1-5. The *Absher I* court held that the amendment was one of substance that was prohibited pursuant to Section 35-34-1-5(b), and therefore the trial court erroneously permitted the amendment. Due to the determination of the issues in Absher's direct appeal, we have no difficulty concluding that Absher was prejudiced by trial counsel's deficient performance.[7]

---

[7] We observe that the *Mays II* court discussed *Jones III* but did not find it persuasive because the *Jones III* court observed in a footnote that the new version of the statute did not have retroactive effect, which was "not consistent with our Court's precedent." 120 N.E.3d at 1083. The *Mays II* court determined that the new version would have been applied in Mays's direct appeal if the appellate court had addressed the issue on the merits. Id. at 1082-83. While the retroactivity of the new version of the statute initially resulted in differing opinions from the Court of Appeals, it now appears that *Jones III* was mistaken on this point. Here, unlike in *Mays II*, the retroactivity of the new version of the statute is not at issue because the *Absher I* court has already held that the amendment violated Section 35-34-1-5 and the trial court erred in granting the motion to

[33] Finding both deficient performance and prejudice to Absher, we conclude that Absher's trial counsel provided ineffective assistance by failing to object to the amendment to the charging information. Thus, the post-conviction court erred by denying Absher relief on this claim. Accordingly, we reverse the judgment on this claim and remand with instructions to vacate the convictions and sentences for Counts 2 and 3.

## Section 2 – Trial counsel did not provide ineffective assistance by failing to object to the prosecutor's comments during closing argument.

[34] Absher also asserts that his trial counsel provided ineffective assistance by failing to object to comments made by the prosecutor during rebuttal closing argument. Although we have concluded that Absher's trial counsel provided ineffective assistance by failing to object to the amended charging information, the resolution of that issue does not affect Absher's conviction on Count 1. As such, Absher's assertion that his trial counsel was ineffective by failing to object to the prosecutor's comments may have bearing on his claim for relief as to Count 1, and therefore we will address it.

[35] The prosecutor's rebuttal closing argument included the following comments:

> Do you know this process is uh, is a strange process for most people. I deal with it everyday. But most people don't. And I can remember in opening and voir dire[,] the defense talking about

---

amend. Thus, had Absher's trial counsel objected to the motion to amend, Absher's convictions, like Fajardo's, would have been reversed.

that, this is important to [Absher], this is important to him. I remember some of the potential jurors say[,] oh I want to make sure because I want to be fair to him. And this whole thing from May 27th through a time that this officer saw him[,] it has been about him[,] that's the way the system is[,] that's the way the process works. Guys want their rights when we want to talk to em[. W]e got to get a search warrant if we want to take evidence from him. We, we appoint them lawyers, their [sic] given the presumption of innocense [sic], there's a burden of proof[,] and we got to prove beyond a reasonable doubt and you're gonna be getting all those rules[,] but I love this moment right now. Because that cloak that has been covering him from [sic] two years is now stripped away[,] and we see him as he is. And I can come up here and tell you it. He's a child molester. We see it. And all those protections that have followed him into that jury room will end when you see it also. I was thinking in trying the thing about what was my powerful piece of evidence. What witness was it, was it the police officer, the PhD., the forensic nurse, and I think back to a story. Jesus was with his disciples[,] and the disciples was asking him Jesus, who's gonna be the greatest in heaven, who, who's gonna be the one gonna be up there the greatest in heaven? One (inaudible) to kings. Jesus grabbed the hand of a little child put it in his own[. W]ell I think my best guess is the greatest witness that I (inaudible) is that of a child. Coz that took a lot of strength and courage. She's a kid. And here these cases are very difficult for everybody including me. Because I have to take it's not your normal witness. It's not somebody I can prepare and tell em to watch out for this point, they're kids. And maybe that's why I get a little emotional about these kind of cases. … I don't comprehend. And I say I don't comprehend. I don't comprehend. I can understand how a person can steal[.] I don't condone it but I understand[.] I can understand how somebody can break into your house and take something, I can even understand how some people murder. But I can't comprehend how you could do that to that little girl. I can't comprehend it. I can't today. And maybe sometimes I've gotten emotional[. S]ometimes I've said something maybe been a

little mean and out of touch that's because I can't comprehend how he could do this. And the laws in this country reflect that. And you know what now, I know it's all about him[,] but I don't care about him no more. It ain't about him. It's about that little [J.L.] That's what it's about. In that same passage Jesus was talking about whoa [sic] to you who would mistreat one of the little ones because if you do you would be better off tying a millstone around your neck and jumping into the depths of the sea. That's what he said. We haven't adopted that law in the State of Indiana yet. So I don't feel bad about the passion that's here. You have to, that's what makes this crime so diabolical. They want to make their own rules. You get to molest kids[,] and if you don't molest em hard enough than [sic] you get to argue[,] oh I only have this little bit of, oh it was just one millimeter. … Those puzzle pieces, they ain't nothing but a ploy. That's a game. I'm done with the game. Let's talk about the truth. That somehow then because he's such a large man[,] I almost got sick hearing that. That oh he would have caused so much more, it, it's sick. … We are lucky today that we had the evidence to present to you. And it still ain't good enough coz they want to make the rules.

Trial Tr. Vol. 2 at 402-05. The prosecutor continued,

In that same story about Jesus and the children he talks about kids and how we have to deal with em. And about we have to show deference, we must understand the little ones, we must bend down to listen to em we must care for those little ones. But he tells us the reason why I'm sure is because they have an angel (inaudible). That's a good explanation of what happened here and why I believe that. I think we need a little help here on earth.

*Id.* at 408. Absher's trial counsel did not object.

"In order to prove ineffective assistance of counsel due to the failure to object, a defendant must prove that an objection would have been sustained if made and that he was prejudiced by the failure." *Kubsch v. State*, 934 N.E.2d 1138, 1150 (Ind. 2010). Absher maintains that an objection would have been sustained on grounds that the remarks were calculated to inflame the passions of the jury, improperly expressed the prosecutor's personal beliefs about Absher's guilt, and vouched for J.L.'s credibility, and that the objectionable remarks prejudiced him because they caused the jury to focus on improper emotional considerations rather than the evidence. The State contends that trial counsel reasonably and strategically chose not to object to the remarks and therefore did not provide ineffective assistance. We agree with the State.

As noted earlier, counsel's strategic choices are accorded significant deference, and there is a strong presumption that counsel's strategic decisions were based on counsel's reasonable professional judgment. *Ward*, 969 N.E.2d at 51; *Weisheit*, 109 N.E.3d at 983. Here, Absher's trial counsel testified at the PCR hearing that he made decisions on whether to object on "a case by case basis[,]" and that he remembered that the "jury just absolutely hated our side of the room at that point[,]" and that objecting to biblical references before a Floyd County jury would not "score any points" and would have "done more harm than good." PCR Tr. Vol. 2 at 28. Absher's trial counsel was familiar with Floyd County juries because he practiced in Floyd County and worked as a public defender from 1997 to 2010. *Id*. at 23-27. Accordingly, we conclude that Absher has failed to overcome the strong presumption that his trial counsel's

decision not to object was based on counsel's reasonable professional judgment. We conclude that Absher's trial counsel did not provide ineffective assistance by failing to object to the prosecutor's closing argument. Therefore, the post-conviction court did not err by denying relief on this claim.

## Section 3 – Appellate counsel provided ineffective assistance by failing to raise the issue of insufficient evidence.

[38]     Absher claims that his appellate counsel provided ineffective assistance by failing to argue on direct appeal that the evidence was insufficient to support Count 2. We observe that our resolution in Section 1 results in remand with instructions to vacate the convictions and sentences for Counts 2 and 3. Because this claim provides a significant independent basis for vacating the conviction and sentence for Count 2, we choose to address it.[8]

[39]     "The standard for gauging appellate counsel's performance is the same as that for trial counsel." *Weisheit*, 109 N.E.3d at 992. The petitioner must show that counsel's performance was deficient in that counsel's representation fell below an objective standard of reasonableness and that but for appellate counsel's deficient performance, there is a reasonable probability that the result of the appeal would have been different. *Overstreet v. State*, 877 N.E.2d 144, 165 (Ind. 2007). Generally, claims of ineffective assistance of appellate counsel fall into

---

[8] The post-conviction court did not specifically address this claim. Instead, the post-conviction court found, "no merit to Absher's fourth assertion that appellate counsel failed to argue insufficiency of the evidence on Count II as a reason not to support consecutive sentences." Appealed Order at 7. That was not Absher's claim.

three basic categories: "(1) counsel's actions denied the defendant access to appeal; (2) counsel failed to raise issues on direct appeal resulting in waiver of those issues; and (3) counsel failed to present issues well." *Massey v. State*, 955 N.E.2d 247, 258 (Ind. Ct. App. 2011). Here, Absher's claim falls within the second category.

> To evaluate the performance prong when counsel waived issues upon appeal, we apply the following test: (1) whether the unraised issues are significant and obvious from the face of the record and (2) whether the unraised issues are clearly stronger than the raised issues. If the analysis under this test demonstrates deficient performance, then we examine whether the issues which … appellate counsel failed to raise, would have been clearly more likely to result in reversal or an order for a new trial. Ineffective assistance is very rarely found in cases where a defendant asserts that appellate counsel failed to raise an issue on direct appeal. One reason for this is that the decision of what issues to raise is one of the most important strategic decisions to be made by appellate counsel.

*Reed v. State*, 856 N.E.2d 1189, 1196 (Ind. 2006) (citations and quotation marks omitted). Appellate courts should be deferential to an appellate counsel's strategic decision to include or exclude issues, "unless such a decision was unquestionably unreasonable." *Stevens v. State*, 770 N.E.2d 739, 760 (Ind. 2002) (quoting *Bieghler v. State*, 690 N.E.2d 188, 194 (Ind. 1997)). We will defer to appellate counsel's decision to exclude an issue unless a defendant shows "from the information available in the trial record or otherwise known to appellate counsel that appellate counsel failed to present a significant and obvious issue

and that this failure cannot be explained by any reasonable strategy." *Id*. (quoting *Ben-Yisrayl v. State*, 738 N.E.2d 253, 261 (Ind. 2000)).

[40] To resolve Absher's claim, we must decide whether he has demonstrated that appellate counsel's failure to raise the issue of insufficient evidence to support Count 2 was "unquestionably unreasonable" in light of the facts of the case and the precedent available when the decision not to raise the issue was made. *Concepcion v. State*, 796 N.E.2d 1256, 1259 (Ind. Ct. App. 2003), *trans. denied*. Put another way, has Absher established that his appellate counsel's performance was deficient because counsel failed to present a significant and obvious issue for reasons that cannot be explained by any strategic decision? *Imel v. State*, 830 N.E.2d 913, 917-18 (Ind. Ct. App. 2005), *trans. denied*.

[41] We first address whether a claim of the insufficiency of the evidence supporting Count 2 was significant and obvious from the face of the record. In reviewing a claim of insufficient evidence, we do not reweigh the evidence or judge the credibility of witnesses, and we consider only the evidence that supports the judgment and the reasonable inferences arising therefrom. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). The evidence is sufficient where "there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt." *Id*. A conviction "may not be based upon guess or speculation." *Smith v. State*, 256 Ind. 546, 551, 270 N.E.2d 743, 745 (1971).

[42]    To establish that Absher committed class A felony child molesting as charged in Count 2, the State was required to prove beyond a reasonable doubt that he, a person at least twenty-one years of age, performed deviate sexual conduct with J.L., a child under the age of fourteen, by placing his mouth on her sex organ. Direct Appeal App. Vol. 1 at 114; Ind. Code § 35-42-4-3. At trial, the State's witnesses included J.L., Rawlings, Sergeant Knight, and nurse Scifres. Our review of the record shows that J.L. did not testify that Absher touched her private area with his mouth, nor did she tell Rawlings, Sergeant Knight, or nurse Scifres that he did. In fact, when Sergeant Knight asked J.L. during her interview whether any part of Absher's body other than his penis touched her private area, she said no. Trial Conf. Ex. Vol. 1 at 52. Rawlings did not testify at trial or in her deposition that Absher placed his mouth on J.L.'s vagina.

[43]    The State argues that the evidence presented by the State's forensic expert Dr. Michael J. Spence was sufficient evidence for a reasonable trier of fact to conclude that Absher placed his mouth on J.L.'s sex organ, citing to Dr. Spence's testimony on pages 155-56 and 170 in the trial transcript. This evidence was the only evidence cited during the State's closing argument in support of Count 2. The State directs us to Dr. Spence's testimony that amylase and Absher's DNA were found on the inside of J.L.'s underwear, and that amylase is an enzyme that is found in saliva.[9] Trial Tr. Vol. 1 at 155-56, 159-

---

[9] Dr. Spence testified that tests for the presence of blood and seminal fluid on J.L.s' underwear were negative. Trial Tr. Vol. 1 at 157.

60.  The State also notes that Dr. Spence testified that J.L.'s external genital swabs testified positive for some amylase.  *Id*. at 159.

[44]  The State ignores the greater part and significance of Dr. Spence's testimony.  Dr. Spence testified that the amount of amylase from the external genital swabs was "not extremely high but it's at least an indication that there is some amylase there."  *Id*. at 159-160.  He explained that the amylase "may or may not be related to saliva … it might just be from sweat.  Skin cells might have a little bit … vaginal secretions might have a little bit of amylase as well."  *Id*. at 160; *see also id*. at 156 (Dr. Spence testifying that "[s]ometimes other body fluids have a little bit of amylase in them, sweat, vaginal secretions, and so forth.").  We also note that although the external genital swabs were sent for DNA testing, no DNA profile was obtained from those swabs.  *Id*. at 171.

[45]  Additionally, Dr. Spence specifically testified that there was "some amylase" detected on two cuttings of J.L.'s underwear, which he said indicated that the cuttings came from regions of the underwear that would be good areas to test for DNA.  *Id*. at 160, 162.  Two additional cuttings were taken from those two areas of J.L.'s underwear and were submitted for DNA testing.  Dr. Spence testified that the DNA testing of those two samples showed a mixture of DNA from which neither J.L. nor Absher could be excluded as the source.  *Id*. at 167-68.  Dr. Spence testified that there were alleles in the DNA profile that matched Absher's DNA profile, but he cautioned, "Now this is not an identity match."  *Id*.  When the prosecutor asked Dr. Spence whether it was correct that the

mixture of DNA consistent with Absher's and J.L.'s was found in the same region of J.L.'s underwear where amylase was found, Dr. Spence responded,

> Yes, and you have to tread carefully because we can be absolutely certain that the amylase positivity which is an indication of saliva, it's not a proof of saliva but it's an indication of it. *You can't, you can't make the leap and say that that means that the DNA came from saliva.* Just means that the two areas are consistent with other. From an area where I saw potential saliva I saw a DNA profile it looks to be, it could be [J.L.'s]. No surprise that's her underpants. But *the additional alleles could have come from the amylase we detected or could come from other sources.* We just know it's foreign to her.

*Id*. at 170 (emphases added).

[46] The State asserts that

> it does not matter if amylase can be present in other bodily fluids. What matters is that the presence of amylase is evidence of saliva, and by logical extension that it was evidence that [Absher's] mouth came into contact with the victim's vaginal region, resulting in the presence of amylase both from the swabs of the vagina and inside the victim's underwear.

Appellee's Br. at 29. Given Dr. Spence's unequivocal testimony that the DNA tests and the amylase tests do *not* mean that the DNA found in the underwear came from saliva, we cannot agree that there is any probative evidence that Absher's saliva was found on J.L.'s underwear. At best, Dr. Spence's evidence shows that it was merely within the realm of possibility that the amylase found on J.L.'s underwear could have come from saliva, and if there was saliva it

could have come from Absher. According to Dr. Spence, one cannot make the leap to conclude that the amylase came from Absher's saliva. In addition to the lack of probative evidence that Absher's mouth touched J.L.'s sex organ, we further note that defense counsel moved for a directed verdict and argued to the jury that the State failed to present sufficient evidence on Count 2. We conclude that a claim of the insufficiency of the evidence supporting Count 2 was significant and obvious from the face of the record.

[47]    We now address whether the unraised claim was clearly stronger than the issue raised by Absher's appellate counsel. On direct appeal, his appellate counsel raised one claim, that the trial court erred in granting the State's motion to amend the charging information. Although *Fajardo* provided a firm foundation for that claim, Absher's trial counsel had failed to preserve the error for appellate review. "The absence of an objection at trial is a proper factor in appellate counsel's decision whether or not to raise an issue." *Harrison v. State*, 707 N.E.2d 767, 787 (Ind. 1999)*, cert. denied* (2000). Absher's trial counsel's failure to preserve the issue significantly affected the strength of the claim because as a result, his appellate counsel was required to demonstrate fundamental error, which provides an exceptionally limited avenue of relief. *See Jewell v. State*, 887 N.E.2d 939, 942 (Ind. 2008) ("[F]undamental error is extremely narrow and available only when the record reveals a clearly blatant violation of basic and elementary principles, where the harm or potential for harm cannot be denied, and which violation is so prejudicial to the [defendant's] rights as to make a fair trial impossible."). Therefore, we

conclude that a claim that the evidence was insufficient to support Count 2 was clearly stronger than the claim raised. Because the insufficiency of the evidence claim was significant and obvious from the face of the record and clearly stronger than the issue raised, appellate counsel's failure to raise it cannot be explained by strategic choice, and therefore we conclude that Absher's appellate counsel provided deficient performance.

[48] Finally, we consider prejudice, that is, whether the claim of insufficiency of the evidence to support Count 2 would have been clearly more likely to result in reversal or a new trial. "While we seldom reverse for insufficient evidence, in every case where that issue is raised on appeal we have an affirmative duty to make certain that the proof at trial was, in fact, sufficient to support the judgment beyond a reasonable doubt." *Bean v. State*, 818 N.E.2d 148, 150 (Ind. Ct. App. 2004). For the same reason that we conclude that the insufficiency of the evidence supporting Count 2 was significant and obvious from the face of the record, we conclude that this issue was clearly more likely to result in reversal. We need not repeat that analysis in detail. In brief summary, there was no witness testimony or direct evidence that Absher placed his mouth on J.L.'s sex organ, J.L. denied that any part of Absher's body other than his penis touched her sex organ, and Dr. Spence testified that one cannot conclude that the DNA found in the underwear cuttings came from saliva. Given the paucity of probative evidence, it is clearly more likely that the court on direct appeal would have concluded that the evidence was insufficient to support Count 2 and would have reversed Absher's conviction on that count. *See Cockrell v.*

*State*, 743 N.E.2d 799, 803 (Ind. Ct. App. 2001) ("When a conviction is reversed due to insufficient evidence, double jeopardy precludes retrial of the overturned conviction."). Given that we have concluded that Absher's appellate counsel performed deficiently and that his performance was prejudicial, appellate counsel provided ineffective assistance of counsel. Therefore, the post-conviction court erred by denying Absher post-conviction relief on this claim.

## Conclusion

[49] We conclude that the post-conviction court erred by denying Absher relief on his claim that his trial counsel provided ineffective assistance by failing to object to the charging amendment, and therefore we reverse judgment on this claim and remand with instructions to vacate the convictions and sentences for Counts 2 and 3. On the other hand, we find no error in the post-conviction court's rejection of Absher's claim that his trial counsel provided ineffective assistance by failing to object to the prosecutor's comments during closing argument and therefore affirm on this claim.

[50] In addition, we conclude that the post-conviction court erred by denying relief on Absher's claim that his appellate counsel provided ineffective assistance by failing to raise the sufficiency of the evidence to support Count 2, and therefore we reverse the judgment on this claim. We note that our resolution of this issue provides an additional ground for Absher's conviction and sentence for Count 2 to be vacated. Based on the foregoing, we affirm in part, reverse in part, and remand with instructions.

Affirmed in part, reversed in part, and remanded.

Najam, J., and Riley, J., concur.